# Powelton Coal Company *versus* McShain.

1. A verbal promise by one of the parties at the making of a written contract, if it was used to obtain the execution of the writing, may be given in evidence.

2. A written agreement was " to transport at such times as you may desire 10,000 tons of coal," &c., evidence was admissible that plaintiff refused to sign unless it was inserted that the coal should be furnished before October 1st, that defendant said " that is understood," and plaintiff then signed.

3. Indebitatus assumpsit will not lie on a special contract unless it has been fully performed by plaintiff;—but plaintiff could maintain an action on the common counts, where a special contract, given in evidence in defence, was found inoperative by reason of fraud.

4. Plaintiff contracted to carry coal; it was carried in a barge in which another was joint owner with plaintiff. *Held*, that the suit for the freight was properly brought in the name of the plaintiff alone.

February 6th 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 12, to January Term 1874.

This was an action of assumpsit commenced February 27th 1869, by Manuel McShain for the use of Patrick Mulhorn, against the Powelton Coal and Iron Cmpany. The declaration was in the common counts, for carrying goods :—The pleas were non assumpsit and payment with leave, &c., and set-off, under which notice of the special matter offered in evidence was given.

The claim of plaintiff was freight on a cargo of coal carried for defendants from Philadelphia to Brooklyn, on the barge " Mary T. Connolly. "

The plaintiff gave evidence by Patrick Mulhorn, captain of the

[Powelton Coal Co. *v.* McShain.]

barge, that the coal had been carried as claimed by plaintiff, that witness had demanded payment of the freight from the defendant as by order on the bill of lading and that they refused without giving any reason and also that half the barge belonged to the plaintiff and half to the witness.

The plaintiff testified:—

"I signed a piece of paper, written out by Mr. Berwind (vice-president of plaintiff) after I had entered upon the work. This is my signature to the contract. This is not the contract under which I carried this coal."

The plaintiff then made the following offer, to wit:—"To prove that about the middle of July 1868, Mr. McShain and Mr. Berwind, acting for defendants, entered into a verbal contract for the transportation of coal from Philadelphia to New York; that it was agreed that ten thousand tons of coal should be shipped and furnished to Mr. McShain before October 1st 1868, and that the rate of freight should be $1.30 a ton; that McShain entered upon performance of this agreement and carried several hundred tons; that several weeks afterward Mr. Berwind wrote this paper of July 28th 1868, and presented it to Mr. McShain for his signature. Before signing, McShain called his attention to the fact that he had omitted to insert in the agreement the time within which the coal was to be furnished; that Mr. Berwind said, 'Of course that is understood,—I will furnish the ten thousand tons before the 1st of October, and could furnish five thousand more if it were necessary;' and thereupon Mr. McShain, with that understanding and upon that assurance, signed this paper."

The defendants objected to the offer, it was admitted by the court and a bill of exceptions was sealed.

The plaintiff said: "On or about the 15th day of July 1868, Mr. Berwind called on me to ascertain at what rate I would transport ten thousand tons to New York. I inquired at what time he would want it transported. If it were summer I would take it lower. If before 1st of October, $1.30 per ton. He agreed to give $1.30 a ton and to furnish the coal by that time. I sent boats as required till sometime in August, perhaps the 8th or 10th. In coming up the street there was a tap on the window of the Powelton Company's office. I went in. Mr. Berwind showed me the paper. I was in a great hurry. I picked it up. I glanced over it and said, 'Mr. Berwind, this is all one-sided; it don't mention that you will furnish the coal by the 1st of October.' He said, 'That is understood. We will not only furnish that, but we expect to furnish five or ten thousand more by that time and ship it.' I made answer that 'If that is understood, I will sign it.' At the time the paper was signed it had not the words at the bottom 'we accept, &c.' After the 1st of October, freights kept advancing until the end of the season. In some cases as high as $2

25 P. F. SMITH—16

[Powelton Coal Co. *v.* McShain.]

were paid. Ten thousand tons were not furnished before October 1st. I called on them from time to time, urging them to give me coal. I sent my captains and vessels there demanding coal. I kept my vessels waiting for coal as long as eight or ten days at a time. Then I had to send my vessels away for other freight, charging them no demurrage. "

The plaintiff gave other evidence in corroboration of his own statements.

The defendants gave in evidence this paper :—

" Philadelphia, July 28th 1868.

To the Powelton Coal and Iron Co.,

Gentlemen :—I hereby agree to transport from Greenwich to New York, at such times as you may desire, ten thousand tons of coal for the sum of one hundred and thirty cents per two thousand two hundred and forty pounds.

Very respectfully,

MANUEL McSHAIN. "

" Manuel McShain, Esq.,

Dear Sir :—We hereby accept the above proposition.

POWELTON COAL AND IRON CO.,

CHARLES F. BERWIND, Vice-President. "

Berwind testified : " In June 1868, our company desired to make arrangements to sell coal in New York. I consulted Mr. McShain regarding it, telling him that I wished to sell ten thousand tons in New York. I wanted to be secure, as we had to sell at a fixed rate. He telegraphed me that he would carry at $1.30, and he wrote to the same effect. Nothing was said about time. I agreed to sell to the Brooklyn Gaslight Company ten thousand tons of coal. It was not in writing. I then mentioned this to Mr. McShain, and he verbally agreed to carry it at $1.30 during the season. I subsequently put it in writing. The whole was written awaiting signatures. There was no verbal agreement at the time it was signed that it was to be carried before October 1st. The first I heard of any allegation in respect to time was some two or three months after. He sometimes complained about coal not coming fast enough, but the first specific allegation respecting the agreement was some time in November, and I think he then fixed the time as the 1st November." He testified further in contradiction of McShain's testimony.

The defendants gave other evidence in contradiction of plaintiff's evidence.

They gave evidence also that the plaintiff had carried but 6468 tons of coal under his contract, and that the defendants had to charter other boats to carry the remainder at increased rates, from 25 to 40 cents per ton beyond the price agreed on with plaintiff.

[Powelton Coal Co. v. McShain.]

They also gave in evidence the bill of lading of the "Mary T. Connelly," by which the freight was made payable to the order of the plaintiff, and which by order endorsed was made payable to Mulhorn.

The following points of the defendants were denied :—

1. The plaintiff cannot recover in this case, because he does not pretend that he complied with his entire agreement, and there is no evidence of any employment of these boats by defendants except by and under the contract.

2. The uncontradicted evidence in the cause being, and the plaintiff having testified and admitted, that the boats were loaded under the contract of July 28th 1868, the plaintiff cannot recover under the pleadings in this case.

3. The freight claimed in this case having been made by the bills of lading payable to the order of Manuel McShain, and he having specially ordered the payment of said freight to other persons, and there being no other or further order by him, he cannot recover in this case.

4. The evidence being that the "Mary T. Connelly" was jointly owned by Captain Mulhorn and Manuel McShain, the latter cannot, under the evidence, recover in this suit.

The court charged: * * * "The defence seems to rest upon two grounds. First, that the plaintiff is not entitled to recover upon the present pleadings; that it was his duty, in making his claim, to have declared upon the special contract which was made in July 1868 ; and that, having neglected to do that, he cannot, in the present state of the pleadings, recover against the defendants.

" That is a good and valid objection to his recovery in this case, if you find that the coal was carried under the special contract of July 1868. [If you find that the plaintiff Mr. McShain carried these cargoes of coal under and in pursuance of the special contract of July 1868, whether under the verbal contract which has been referred to, and which preceded the written contract, or under that which was in writing, or the contract in writing as sought to be reformed by the plaintiff, then that is a fatal objection to the plaintiff's recovery in this case, and your verdict ought to be for the defendants. If it was not carried under the special contract, then the objection is not well taken. I leave it to you to determine, as a question of fact, whether or not these cargoes were carried under the special contract made in July 1868.]

"The second point of defence is one which goes to the merits of the plaintiff's claim, and it is that the plaintiff entered into a contract in July 1868, with the defendants, by which he bound himself to carry ten thousand tons of coal for the defendants when they might desire, at the price of $1.30 a ton freight; that he carried a part of the quantity which he stipulated in his contract to carry, but that he refused to carry the balance of the ten

thousand tons; that the defendants were compelled to employ other boats at higher rates of freight than that which the plaintiff agreed to carry for, and were obliged to pay differences in freight, exceeding the freights which the plaintiff had agreed to carry them, by a sum which exceeds the amount of the plaintiff's claim. Of course, I need not say to you that that is a perfectly good defence, if it is made out. * * *

"Now, that is the most important point in the case, whether the plaintiff was bound to carry it or not. The contract in writing has been produced, signed by the plaintiff on the 28th of July 1868, by which it appears the plaintiff agreed to carry ten thousand tons of coal for the defendants, at such times as they, the defendants, might desire, at the price named, $1.30 a ton. If that contract is to be interpreted by its written terms, without any extraneous additions to it, it is perfectly plain that he was bound to carry this coal, as well as the rest which he had carried, at the same rate, viz.: $1.30.

"The plaintiff, however, alleges that the written agreement does not contain the whole contract. He says that the contract was at first a verbal contract—a contract not put in writing, and that by the terms of that contract he agreed to carry ten thousand tons, at the rate per ton mentioned, if the defendants would furnish it by the 1st of October, and that he did not agree to carry it at any time that they might ask him to carry it. That subsequently, when he was asked to sign the written paper drawn up by the vice-president of the company (that is, the written contract of the 28th of July), upon reading it over he remarked that it was all on one side, and that it did not mention that the defendants would furnish the coal by the 1st of October; that Mr. Berwind, the vice-president, then replied, 'That is understood, we will furnish that and ten thousand tons more besides, by that time;' that the plaintiff then replied, 'Well, if that is understood, I will sign it,' whereupon he signed it. [Now, if this limitation as to time was a part of the contract, and a material part of the contract as originally made, and if the plaintiff was, when his attention was called to the fact that this had been omitted from the written contract, induced to sign the written contract upon the faith of and trusting to the representations of Mr. Berwind, that it should be regarded as a part of the contract as much as if it were written in it, then it is to be so regarded.] * * * I instruct you that mere representations or remarks which did not enter into the contract are of course no part of the contract; but if by the terms of the original verbal contract it was agreed that all the ten thousand tons should be delivered to the plaintiff by the 1st of October, and if the plaintiff, when the verbal contract was put in writing on the 28th · of July 1868, objected to sign it because it had not that stipulation in it, and was induced to sign it by the promise that it should

[Powelton Coal Co. *v.* McShain.]

be understood and considered as part of the contract, although not in the writing, then the stipulation referred to is to be considered as part of the contract, although it is not in the writing.

" Was this a condition of the original contract ?

" In determining this, the jury should be careful to discriminate between mere conversations and inducements held out while the parties were bargaining and the essential terms of the contract finally agreed upon between them. All the conversation is regarded as merged in the final agreement. That is to govern, and it is not to be controlled by prior conversations or remarks, or the expres- sion of an expectation that the coal would be shipped before a certain time, would not qualify the contract or add that as a con- dition to it; but if that was agreed to, or as one of the terms or conditions of the contract, and was so understood by the parties, then and then only it was a part of the contract. * * *

" Primâ facie the written agreement contains the whole contract. There must be very clear and satisfactory evidence to justify you in adding anything to it. But if you are perfectly satisfied by the evidence that it was a part of the original agreement that the plaintiff should furnish this coal to be carried (the whole of the ten thousand tons) by the 1st of October; and if you are clearly of opinion that the plaintiff was induced to sign the written paper which has been given in evidence by the representation of Mr. Berwind, that it should be understood to be a part of the contract; if, in a word, both of the parties understood the delivery of the coal by the 1st of October to be an essential part of the contract, and that it should be regarded as in the writing, although omitted, then it is a part of the contract, and the defendants were as much bound by that as the plaintiff was bound to carry the coal. If it was the contract that the defendants should furnish the coal by the 1st of October, of course the plaintiff was not bound to carry at the same rates after the 1st of October. Whether time is an essen- tial part of the contract depends very much upon the agreement and the understanding of the parties, and is to be found by the jury like other facts. Ordinarily, time is not considered an essen- tial part of a contract; but when the parties make it a part of the contract, and where its influence upon the contract is apparent, and the parties would be in a worse condition if it were not con- sidered part of the contract, then it is proper to regard it as an essential part of the contract.

" [It appears to me if there was in the contract a condition that it should be delivered by the 1st of October—if the weight of the evidence is that that was an essential part of the contract—if that was the agreement (and I leave that as a question of fact for you, with the other facts in the case), then the defendants ought to have complied with the agreement.] Mr. McShain, in contracting with the company, might, it seems to me, very well restrict his allega-

tion to a certain *time*, taking into consideration the fact that after that time, as the fall and winter were approaching, freights would in all probability rise. If, therefore, you think it was a part of the original contract that the coal should be furnished by the 1st of October, and if you think that that was a material part of the contract, and that the plaintiff was induced to sign the paper by a representation that it should be considered a part of the written contract, although it had been omitted from the paper, then he was not bound to carry the coal after the 1st of October at the same rates; and, in that view of it, the defendants would have no set-off at all, because their loss is not attributable to any fault of the plaintiff. If, on the other hand, you shall find that the contract was not a contract with this condition as to time in it, or that what was said about the time of delivery was a mere representation while the negotiation was proceeding, simply part of the conversation when the parties were bargaining about it, a mere expectation or inducement held out, and did not enter into the contract at the time it was agreed upon, then, of course, it would not form a part of the contract, and the plaintiff would be bound to carry at the same rates, and the defendants would be entitled to their set-off. The case, in its results, depends almost entirely upon the view which you shall take of this matter with regard to the time at which the coal should be furnished, and I think, according as you shall find that fact, your verdict in the case will probably be." *   *   *

The verdict was for the plaintiff for $269.75.

The defendants took a writ of error.

They assigned for error the admission of the evidence objected to; the denial of their points, and the parts of the charge in brackets.

*J. H. Gendell* and *E. S. Miller*, for plaintiff in error.—The parol evidence was inconsistent with the writing; it was to alter a written instrument, and therefore inadmissible: Cummings *v.* Antes, 7 Harris 287; Miller *v.* Fichthorn, 7 Casey 252; Heebner *v.* Worrall, 2 Wright 376; Harbold *v.* Kuster, 8 Id. 392; Fisher *v.* Deibert, 4 P. F. Smith 460. The weight of evidence was so preponderating against the plaintiff that the court should have instructed the jury that it was insufficient: Todd *v.* Campbell, 8 Casey 250; McGinity *v.* McGinity, 13 P. F. Smith 38; Moore *v.* Small, 7 Harris 461; Poorman *v.* Kilgore, 2 Casey 371; Rankin *v.* Simpson, 7 Harris 471; Brawdy *v.* Brawdy, 7 Barr 157; Huss *v.* Morris, 13 P. F. Smith 367. Indebitatus assumpsit will not lie on a contract unless there has been entire performance: 1 Chitty's Pl. 340, 349; Algeo *v.* Algeo, 10 S. & R. 235; Harris *v.* Liggett, 1 W. & S. 301.

[Powelton Coal Co. v. McShain.]

*H. Hanson* (with whom was *D. Dougherty*), for defendant in error.—The parol evidence was offered to reform the contract to prevent a fraud.   Had the writing been a formal contract *inter partes*, such parol evidence would have been in accordance with the law in Pennsylvania: Chalfant *v.* Williams, 11 Casey 212; Harbold *v.* Kuster, 8 Wright 392; Fisher *v.* Deiberts' Adm., 4 P. F. Smith 460; Balt. and Phila. St. Co. *v.* Brown, Id. 77; Batdorf *v.* Albert, 9 Id. 59.

The opinion of the court was delivered, May 18th 1874, by

GORDON, J.—It is certainly permissible to give evidence of a verbal promise made by one of the parties, at the time of the making of a written contract, where such promise was used as an inducement to obtain the execution thereof: Campbell *v.* McClenachen, 7 S. & R. 171.   This rule is put upon the ground that the attempt afterwards to take advantage of the omission from the contract, of such promise, is a fraud upon the party who was induced to execute it upon such promise, and hence he will be permitted to show the truth of the matter: Clark *v.* Partridge, 2 Barr 13; Renshaw *v.* Gans, 7 Barr 117; Dutton *v.* Tilden, 1 Harris 49.

Now, in the case in hand, McShain testified that the absolute condition upon which he signed the agreement was, that the company should furnish the coal by the 1st of October.   He says, after speaking of their previous parol arrangement, " Mr. Berwind showed me the paper.   I was in a great hurry.   I picked it up.   I glanced over it and said, ' Mr. Berwind, this is one-sided; it don't mention that you will furnish the coal by the 1st of October.'   He said, ' That is understood; we will not only furnish that, but expect to furnish five or ten thousand more by that time.'   I made answer, ' If that is understood, I will sign it.' "   This piece of evidence showed a distinct and material condition by which McShain was induced to sign the contract.   To say then, that this contract might be enforced without regard to the express parol stipulation, under which it was signed, would be to disregard long and well-established legal principles, as well as the plainest demands of common honesty.   The exceptions, therefore, to the charge and admission of evidence are not sustained.   The case was properly submitted, and though in fact, the weight of the evidence may have been with the defendant, the resulting error lay with the jury, not with the court, and hence, comes not within our power of correction.

These observations dispose of the main points in controversy. We may observe, however, with reference to the point made, that *indebitatus assumpsit* will not lie upon a special contract, except where there has been a full performance on the part of the plaintiff, it is conceded that this proposition is correct.   But the plaintiff did not rely upon the special contract; that was set up by the defend-

[Powelton Coal Co. *v.* McShain.]

ant for the purpose of defeating the plaintiff's claim, and as the jury found that it was not operative by reason of the defendant's fraud, we cannot see why the plaintiff's recovery under the *indebitatus* counts may not be sustained. So we cannot see that there was anything in the question raised by the defendant, as to the relation McShain's employees sustained to him. It was not alleged that the company had contracted with any one but the plaintiff, or that there had been a joint undertaking by him and some one else to transport the merchandise in question. That he had employed his own firm to assist him in the performance of his undertaking, could, therefore, by no possibility, affect his right to recover.

Judgment affirmed.