L. E. SUTTON, Appellee, v. H. WEBER & O. T. WEBER, Appellants.

**Partnership contracts:** PURCHASE OF GOODS BY ONE PARTNER. One partner has no authority to bind another by a contract for the purchase of goods which are not within the scope of the partnership business, unless authorized so to do, and especially where the seller has notice of the want of authority: and where by agreement between the partners one has sole authority to buy for the firm, which fact is made known to the seller, the other cannot make a valid contract for goods within the scope of the business, except with the consent or approval of his partner.

**Evidence:** CONDITIONAL DELIVERY OF WRITING. Where the rights of third parties have not intervened, oral testimony is admissible to show that a written contract was delivered on condition that it should become effective on the happening of a future event, and is not subject to the objection that it tends to vary the writing.

**Evidence:** CONTEMPORANEOUS ORAL AGREEMENT. Where a written agreement reciting a delivery of goods purports to be a contract of agency but makes no reference to the terms of the agency, parol evidence is admissible to show that by a contemporaneous oral agreement the goods might be returned under certain contingencies, such oral agreement not being inconsistent with the writing.

*Appeal from Kossuth District Court.*—HON. W. B. QUARTON, Judge.

THURSDAY, DECEMBER 15, 1904.

THE opinion states the case.—*Reversed.*

*F. M. Curtis* and *Watson & Weber,* for appellants.

*E. A. Morling* and *E. V. Swetting,* for appellee.

WEAVER, J.—The plaintiff, as the assignee of her husband, J. L. Sutton, brings this action at law to recover the price of certain goods alleged to have been sold by the latter to the defendants on terms stated in a written contract. The defendants are partners doing business as harness makers in Lee county, Iowa. J. L. Sutton lives in Kossuth county, Iowa, and the nature of his business appears to be that of vendor of alleged remedies for the diseases and discomforts to which domestic animals are subject. The writing, which is worthy of study, is in the following words:

### Duplicate Agent's Agreement.

Made and entered into this 10th day of July, A. D. 1902, by and between J. L. Sutton of Algona, Iowa, party of the first part, and H. & O. T. Weber of West Point, County of Lee and State of Iowa, party of the second part, witnesseth, That party of the first part for and in consideration of 85c. per can for Sutt's Hog Worm Exterminator, 30c. per package for Poultry and Condition Powders, 60c. per can for Lice Killer, 60c. per bottle for Barb Wire Liniment, 60c. per bottle for Sutt's Calf Dehorner Fluid, 60c. a bottle for Sutt's Lump Jaw Cure, 85c. per sack for Sutt's Young Calf Food Meal, $1.75 per sack or box for Sutt's Stock Food in sacks or boxes, 15c. a box for Gall Cure, 30c. a can for Harness Dressing, 60c. a box for Heave Cure, and 60c. a can for Hoof Ointment, to be paid in sixty (60) days to J. L. Sutton at Algona, Iowa. J. L. Sutton delivers party of the second part, f. o. b. Algona:

12 cans Sutt's Worm Exterminator,
12 cans Lice Killer,
12 bottles Sutt's Calf Dehorner Fluid,
12 sacks Sutt's Young Calf Food Meal,
12 boxes Gall Cure,
12 boxes Heave Cure,
12 pkgs. Poultry and Condition Powders,
12 bottles Barbed Wire Liniment,
12 bottles Sutt's Lump Jaw Cure,
12 sacks — boxes — Sutt's Stock Food,
12 cans Harness Dressing,
12 cans Hoof Ointment,

and also gives said second party the sale of Sutt's Stock Remedies in the town of West Point, County of Lee and State of Iowa.   Not subject to countermand by second party. And said second party further agrees to keep or cause to be kept, at least ten cards of advertisements tacked up at the most public places, such as creameries, schoolhouses, livery barns and blacksmith shops all the year around, furnished by J. L. Sutton free to the local agent; and should the local agent fail to fulfill any of the above agreement, then J. L. Sutton or his authorized employé will be unconditionally empowered to cancel this contract by taking back the amount of medicine on hand and appoint another agent and to give the second agent the same rights and privileges.

[Signed]                              J. L. Sutton.
                                      H. & O. T. Weber.

The answer alleges, among other things: (1) That at the time the writing was executed the parties entered into a collateral oral agreement by which defendants were to become the agents of Sutton for the sale of goods of the kind described, and if they did not sell or were unable to sell the stuff delivered by Sutton, the latter would take the same back in full satisfaction and discharge of the written agreement; that, in reliance upon said oral agreement, defendants entered into the written contract; that defendants did not in fact make any sales of said property, and before this suit was begun, tendered and offered to return the same to plaintiff.   (2) It is further alleged that the contract sued upon was made with the defendant H. Weber in the absence of his partner, O. T. Weber; and that H. Weber had no authority to make the purchase for the firm, and so informed the agent who represented Sutton in the transaction; and that H. Weber signed the firm name to the contract upon the express understanding and condition that said contract was not to go into effect or be of any binding force until approved by O. T. Weber.   It is further alleged that, upon being notified of the signing of said agreement, O. T. Weber disapproved and refused to be bound thereby, and notice thereof was immediately given to Sutton, with a request that

he would not ship the goods, but, in violation of the agreement upon which the contract was signed, and in disregard of the notice of O. T. Weber's disapproval, Sutton proceeded to ship the goods, and now refuses to accept a return thereof. On the issue presented by these answers, a trial was had to a jury. The plaintiff put in evidence the written contract, with testimony tending to show the shipment to defendants of the goods therein described, and rested. Thereupon the defendants offered testimony tending to sustain the allegations of the answer as above mentioned, but the same, with few exceptions, were excluded upon plaintiff's objection as being incompetent, immaterial, and irrelevant, and as being an attempt to vary or avoid a written contract by parol evidence of prior or contemporaneous negotiations between the parties. At the close of defendant's evidence, the court, upon plaintiff's motion, directed a verdict in her favor for the full amount claimed, and from the judgment entered thereon defendants appeal. The court appears to have held that the matters pleaded in the answer constitute no defense, and testimony sustaining the same was therefore inadmissible, and such is the position taken by counsel for appellee in this court.

I. Passing for the present the first plea, concerning an agreement by which the defendants, upon a failure to sell the goods might return them to Sutton in satisfaction of their

1. PARTNERSHIP    obligation under the written contract, we have
CONTRACTS:
purchase of     to say that, in our judgment, the second plea
goods by one
partner.        states a perfect defense, and the defendants
should have been permitted to prove the same, if able so to do. It is to be noted that the written contract purports to be made with the defendants as a partnership. This partnership was engaged in the manufacture and sale of harnesses, and under familiar principles, neither partner had any authority, as such, to bind the other, without his express or implied consent, by contracts not within the scope of their partnership business. If a partner in the harness business may involve

the firm in debt for "worm exterminators," "lice killers," and "lump jaw cures," so may he also for musical instruments, theater tickets, millinery goods, and any other property or thing for which the world of trade or speculation may seek purchasers. The answer alleges that this want of authority on part of H. Weber to bind the firm in such matters was understood and discussed between him and the seller's agent, and the contract was signed with the understanding that, if disapproved by O. T. Weber, it should be of no force and effect. Indeed, even in the absence of such agreement, and in the absence of any showing whatever that dealing in this line of goods was within the scope of the partnership business, the contract would have to be ratified by the absent partner before he would be bound thereby.

But we may go further, and say that, although dealing in this line of goods was clearly within the scope of the partnership business, yet, if, by agréement between the partners, O. T. Weber had sole authority to do the buying for the firm, and H. Weber was authorized to buy only with the consent or approval of his partner, and such agreement or limitation upon the power of the latter was made known to the seller's agent before the contract was signed, the contract would not be enforceable against the partnership unless ratified by O. T. Weber. If the contract was made under such circumstances, and O. T. Weber, upon learning of it, promptly refused to ratify it, and notified Sutton not to ship the goods, then such contract never became effective. *Knox v. Buffington,* 50 Iowa, 320; 5 Wait's Action & Defenses, 126; Collyer, Partnership, section 387; *Boardman v. Gore,* 15 Mass. 339; *Leavitt v. Peck,* 3 Conn. 125 (8 Am. Dec. 157).

It is, moreover, a well established doctrine that, where the rights of *bona fide* holders do not intervene, the rule which forbids oral testimony to vary the terms of a written contract does not operate to prevent a party thereto from showing that it was never delivered, or that the delivery was conditional,

2. EVIDENCE: conditional delivery of writing.

and the contract was to take effect only upon the happening of some future event. For instance, it has been held that a person may successfully defend against a claim upon a promissory note by showing that it was given for an insurance policy under a parol agreement that he should have a certain time in which to determine whether he would be insured, and that, if he should decide not to be insured, the policy would be taken back and the note returned. *Watkins v. Bowers,* 119 Mass. 383. See, also, *Ins. Co. v. Williams,* 155 Pa. 405 (26 Atl. Rep. 655); *Bowman v. Tor,* 3 Iowa, 573; *Brewster v. Reel,* 74 Iowa, 506; *Brennecke v. Heald,* 107 Iowa, 376; *Bank v. Boddicker,* 105 Iowa, 548, 117 Iowa, 407; *White v. Kahn,* 103 Ala. 308 (15 South Rep. 595); *Leppoc v. Bank,* 32 Md. 136; *Scaife v. Byrd,* 39 Ark. 568; *Race v. Weston,* 86 Ill. 91; *Stephens v. R. R.,* 20 Barb. 332; *Branson v. R. R.,* 11 Or. 161 (2 Pac. Rep. 86); *Pyrn v. Campbell,* 6 El. & B. 370; *McFarland v. Sikes,* 54 Conn. 250 (7 Atl. Rep. 408, 1 Am. St. Rep. 111); *Benton v. Martin,* 52 N. Y. 570; *McCormick v. Faulkner,* 7 S. D. 363 (64 N. W. Rep. 163, 58 Am. St. Rep. 839); *Reynolds v. Robinson,* 110 N. Y. 654 (18 N. E. Rep. 127). There is a clear distinction between oral testimony to vary the terms of a written contract and parol testimony to show that the writing never had a legal inception as a contract. The appellants should have been permitted to give evidence in support of the second defense above set forth, and in excluding such proof there was error.

II. Turning now to the first defense, which is based upon a collateral agreement by which defendants were to be made Sutton's agents for the sale of the alleged remedies,

3. EVIDENCE: contemporaneous oral agreement.

it may be said at the outset that, if the plea is to be construed as setting up a claim which is inconsistent with the clear meaning of the written contract, then proof of such oral agreement would be inadmissible. *Fawkner v. Smith,* 88 Iowa, 169. But subject to this limitation, where the rights of a *bona fide*

holder do not intervene, it is the very general rule that parol evidence is admissible whenever the writing is itself incomplete or ambiguous, or there is a collateral oral contract, or it appear that the real contract between the parties is part in writing and part in parol. *Des Moines Co. v. Kinkley*, 62 Iowa, 637; *Couch v. Meeker*, 7 Am. Dec. 274; *Welz v. Rhodius*, 87 Ind. 1 (44 *Am. Rep.* 747); *Babcock v. De Ford*, 14 Kan. 408; *Chapin v. Dobson* 78 N. Y. 74 (34 Am. Rep. 512); *Batterman v. Pierce*, 3 Hill, 171; *Powelton Coal Co. v. McShain*, 75 Pa. 238; *Stoops v. Smith*, 100 Mass. 63 (1 Am. Rep. 85, 97 Am. Dec. 76); *Routledge v. Worthington*, 119 N. Y. 592 (23 N. E. Rep. 1111); *Schmittler v. Simon*, 114 N. Y. 184 (21 N. E. Rep. 162, 11 Am. St. Rep. 621); *Braly v. Henry*, 71 Cal. 486 (11 Pac. Rep. 385, 12 Pac. Rep. 623, 60 Am. Rep. 543); *Johnson v. Oppenheim*, 55 N. Y. 280; *Weeks v. Medler*, 20 Kan. 57; *Phillips v. Preston*, 46 U. S. 278 (12 L. Ed. 152). See, also, *Oakland Cem. Association v. Lakins*, 126 Iowa, 121.

The proposition is stated in Taylor's Evidence, section 1038, as follows: "The rule [against parol evidence] does not prevent parties to a written contract from proving that, either contemporaneously or as a preliminary measure, they had entered into a distinct oral agreement on some collateral matter. Still less does the rule exclude evidence of an oral agreement which constitutes a condition on which the performance of a written agreement is to depend." Mr. Stephen, in his Digest of the Law of Evidence, article 90, uses this language: "The existence of any separate oral agreement as to any matter on which the document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them," constitutes an exception to the rule against parol evidence. This doctrine was expressly affirmed by us

in *Sutton v. Griebel,* 118 Iowa, 78 — an action to which the present plaintiff was a party. We there said that " a collateral agreement relating to matters not covered by the written agreement may be shown," and cited in support of that conclusion many cases from our own and other States which it is unnecessary to again recapitulate. Under the rule thus stated we held that, in an action upon a written contract by which defendant and others undertook to pay $100 each for shares in the purchase of a stallion, it was allowable to plead and prove that at the time the writing was executed there was a collateral agreement between the parties by which defendant was to be allowed to withdraw from the arrangement at any time before the final completion of the transaction, and that he did in fact withdraw therefrom, and plaintiff secured another purchaser for the share assigned to the defendant.

The principle recognized in the several cases we have cited seems to be applicable here. In the first place, the writing is studiously indefinite. It bears the conspicuous heading, " Duplicate Agent's Agreement," and the word " agent " is made prominent by superfluous repetition in the body of the writing, but the document is barren of any agreement or terms of agency. On the other hand, the writing may be searched in vain for the words " buy " and " sell," or their equivalent, and " seller " and " purchaser " are equally conspicuous by their absence. There is no express request or order for the goods. While we may, perhaps, supply by implication words sufficient to give a part of the writing legal effect as an order or purchase by the defendants, it is, as a whole, so evidently incomplete that proof of the circumstances under which it was made may well be admitted. If the obscure references to any agency with which the document is studded were not intended to be merely ornamental, we may well conclude that they indicate the existence of a collateral agreement by which upon terms of some kind, Sutton had appointed the defendants agents for his alleged

remedies — at least, that these terms of the contract lend probability to the claim that such collateral agreement was made. We think it was competent, therefore, for the defendants to show by parol, if such be the fact, that a contract or agreement of agency existed, and that by the terms of such agreement the goods might in certain contingencies be returned. Babcock v. De Ford, 14 Kan. 408. Such agreement is not necessarily inconsistent with the terms of the writing.

For the reasons stated, the judgment of the district court is *reversed*.