# Perkiomen Railroad Company, Appellant, *v.* Bromer.

*Evidence—Parol evidence—Written agreement—Deed—Railroad—Farm crossing.*

While all negotiations and promises and oral agreements are merged in and extinguished by the written instrument which is the final result of the bargainings of parties, yet an oral promise by one of the parties made at the time and used to procure the execution of the writing may be given in evidence, although its effect is to change the writing.

Parol evidence is admissible to show that the grantor in a deed to a railroad company was induced to execute the deed by a contemporaneous parol promise made by the president of the railroad company that the company would build a crossing over the railroad to connect the two portions of the owner's land.

Such a parol agreement will be sustained where the testimony of the grantor on the subject is corroborated by a witness who was present when the writing was executed, and by proof that the grantor had remained in possession of the land thirty-six years under an arrangement by which his right to insist on a crossing, and the duty of the company to construct one, were suspended.

Argued Feb. 4, 1907.   Appeal, No. 202, Jan. T., 1906, by plaintiff, from judgment of C. P. Montgomery Co., March T., 1905, No. 11, on verdict for defendant in case of Perkiomen Railroad Company v. Albert Bromer.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ.   Affirmed.

Ejectment for land in Schwenksville.   Before WEAND, J.

At the trial, when the plaintiff was on the stand, the following offer was made:

We propose to prove that anterior to the execution of the release offered in evidence by the plaintiff an agreement was entered into between him and the Perkiomen railroad, represented by Anthony H. Seipt, its president, by which, in consideration of his executing that release they would pay him $1,500 and give him an overhead crossing to his lands on the eastward of the proposed railroad; that when the release was drawn up and brought to him for execution he objected to it because of the omission of any stipulation as to the crossing; that Mr. Seipt then informed him that the insertion of such a stipulation in that release was not necessary because the railroad company was bound to give him a crossing anyhow, and that it was not customary to insert such a stipulation in a release; that thereupon, and upon the faith of Mr. Seipt's statement, he executed that release; that thereafter, about four months, a subsequent agreement was entered into by him with the said railroad, in the person of its president, Anthony H. Seipt, by which it was stipulated and agreed, that if he would not insist upon the construction of that overhead crossing the railroad company would suffer him to use and occupy the land then in his possession and included in that release until the railroad company did build him an overhead crossing, and that he would not have signed said release except upon the faith of those representations by Mr. Seipt.

Mr. Evans: Objected to.

The Court: Are you basing this offer on the fact that Mr. Seipt was the president, or was the agent, or what?

Mr. Freedley: Basing it upon the fact that he was the person who represented the railroad company in these negotiations, being by office president of the railroad company and its authorized agent.

The Court: I want to know whether you are basing it upon the fact that he was the agent who negotiated this transaction, or whether he was the president, or whether you are taking both?

Mr. Freedley: We are taking both of them; taking the position that he was the only party that we knew in this transaction.

The Court: The objection is, that the offer as made ought to be modified. Mr. Freedley in his offer of the two transactions states that a contract was made; I suppose you mean a parol contract?

Mr. Freedley: Yes, sir.

Mr. Evans: We object to this offer because it is an attempt on the part of the defendant to change and modify a written instrument; that all that is proposed has been swallowed in the deed that afterwards followed.

The Court: The objection is overruled. Plaintiff excepts. Bill sealed. [10]

Mr. Strassburger: " Q. On the day that the release was executed, what took place, January 22, 1869—what took place then? A. On that day Mr. Seipt, the president and agent of the Perkiomen Railroad Company, in company with 'Squire William Fox, came to my place of business and said, now we are ready to close up that transaction, and he said here is your release that you will have to sign. I read that release carefully, and I said, Mr. Seipt, this release don't say anything about that crossing which you agreed that I should have; you don't mention it at all. Mr. Seipt said the privilege of a crossing is not a matter of damages; he said the law compels us to give any man a crossing whose lands were cut in two parts; that seemed plausible to me; I believed it at the time, and upon that explanation I signed the release.

" Now, about four months after that, some time in May, I think, I met Mr. Seipt, the president and agent of the Perkiomen Railroad Company. I met him on the cars. I said, Mr. Seipt—"

Mr. Evans: We object to this witness testifying to any matter that occurred between him and Mr. Seipt relating to the construction of a crossing or to the use of this land unless

either it was in writing by the company or the authority that Mr. Seipt was acting under is shown.

The Court: The objection is overruled for the present. Plaintiff excepts. Bill sealed. [11]

Mr. Strassburger : " Q. Well ? A. I asked Mr. Seipt how about my crossing ; he told me he would have it ready for me in time to get in my crops from the lowland ; why, he said, Mr. Bromer, you know we are trying with all our might to have the railroad extended to Schwenksville and run the first train on the fourth of July morning ; we are short in labor, and it is not hardly possible to get that crossing ready for you. He said, Mr. Bromer, have you no way to get out ; could you find a way to get down there to get your crops ? I said, yes, I can go over the bridge and the mill property and the Perkiomen, and get it off that way, but I said I could hardly haul a heavy load and it is very unhandy. Well, he said, Mr. Bromer, I wish you would do that, and in the next season you shall have your crossing ready in time for harvest. Well, I considered about this a little, and with the barn and yard as it was then, it was certainly of great importance to me, and especially the barn, and I said, Mr. Seipt, how would this do ; I would be willing ; I would be willing to do without a crossing as long as you let me use this ground and the barn ; if I can have the use of that, I will go around and bring over my crops in that way, but, I said, whenever you make me a road, and you want to occupy this ground, I have no longer to build a barn except for the lowland which I have to fill up ; then I want my crossing and must have it. He said that was all right ; he seemed to be very much pleased ; he seemed to be more pleased than I was ; he extended his hand and said, Mr. Bromer, that is a bargain, and this was nearly thirty-six years ago, and I have kept my side of the bargain forthwith."

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (10, 11) rulings on evidence, quoting the bill of exceptions.

*Montgomery Evans*, with him *John M. Dettra*, for appellant.—The declarations of the agent that a provision for a farm crossing need not be contained in the deed was not suffi-

cient to reform the deed in the absence of evidence of authority of the agent other than that shown by the paper itself: Espy v. Anderson, 14 Pa. 308; Hale v. Henrie, 2 Watts, 143; Soles v. Hickman, 20 Pa. 180; Caldwell v. Fulton, 31 Pa. 475; Cunningham v. Neeld, 198 Pa. 41; Jones v. Yoder Land Co., 16 Pa. C. C. Rep. 652; Rice v. Lewis, 4 Atl. Repr. 810; Hollenback's App., 121 Pa. 322; Fink v. Farmers' Bank, 178 Pa. 154; McAninch v. Laughlin, 13 Pa. 371; Rankin v. Mortimere, 7 Watts, 372; Clapp v. Hoffman, 159 Pa. 531.

Even though the deed be considered performed and a covenant to supply a farm crossing written into it, the grantor cannot retain possession of the land until performance of the covenant, but his remedy is an action for damages for breach of the covenant: Lilley v. Ry. Co., 213 Pa. 247; Pusey v. Wright, 31 Pa. 387; Kemble v. Ry. Co., 140 Pa. 14; Brown v. R. R. Co., 29 Pa. Superior Ct. 131; Jones v. Railroad Co., 11 Pa. Superior Ct. 202; Kenny v. Railway Co., 208 Pa. 30.

The president of a corporation grantee in a deed cannot relinquish possession of the land to the grantor until performance of a covenant to supply an easement over land conveyed, unless express authority in writing be given him for such action: Angell & Ames on Corp., sec. 239; Soper v. R. R. Co., 19 Barb. 310; Penna. R. R. Co.'s App., 80 Pa. 265; Smith v. Iron & Steel Co., 208 Pa. 462; Murray v. Lumber Co., 143 Mass. 250 (9 N. E. Repr. 634); Clarkson v. Keystone Oil Cloth Co., 23 Pa. C. C. Rep. 189; Erb v. Brown, 69 Pa. 216; Railway Co. v. Peet, 152 Pa. 488; Pierce v. Barney, 209 Pa. 132; Bangor, etc., Railway Company v. Slate Company, 203 Pa. 6; Bank of Allentown v. Hoch, 89 Pa. 324; Twelfth St. Market Company v. Jackson, 102 Pa. 269.

*Henry Freedley,* with him *J. A. Strassburger,* for appellee.

OPINION BY MR. JUSTICE FELL, March 11, 1907:

This was an action of ejectment to recover possession of a part of the plaintiff's right of way obtained by grant from the defendant in 1869, which has since remained in his possession. The road divided a tract of five acres of land owned by the defendant in a country town so as to prevent convenient access between the parts, and the opening of the right of way to its

full width of eighty feet would require the removal of a barn, which for want of space could not be rebuilt on the part on which the house is located. The plaintiff had no occasion to occupy the whole of the right of way, and the defendant remained in undisputed possession of it for thirty-six years, until this action was brought.

At the trial there was no dispute as to the grant or the boundaries. The defense was that, by the original agreement made with the president of the company, who was its agent in procuring rights of way, the defendant, in addition to the money consideration to be paid, was to have a crossing to connect the pieces of his land, which would be separated by the construction of the road. That when the deed was presented to him for execution, he objected to it because no mention was made in it of the crossing, and that he was assured by the president that it was unnecessary to mention it in the agreement, as the company would be required by law, irrespective of the agreement, to construct the crossing, and that on faith of this assurance he acknowledged and delivered the deed. That subsequently he demanded the crossing and was told by the president that it would be built soon and was requested not to insist on the crossing while he could have the use of the barn, and that to this he agreed. The assignments of error relate to the admission of this testimony, and to the effect given it by the charge.

While all negotiations and promises and oral agreements are merged in and extinguished by the written instrument which is the final result of the bargainings of parties, yet an oral promise by one of the parties made at the time and used to procure the execution of the writing may be given in evidence, although its effect is to change the writing : Powelton Coal Co. v. McShain, 75 Pa. 238 ; Thomas & Sons v. Loose et al., 114 Pa. 35 ; Ferguson v. Rafferty, 128 Pa. 337. The instruction as to the standard of evidence required that it must be clear, precise and indubitable in the sense that it carries conviction to the mind and by witnesses who know and are credible, was full and accurate. The plaintiff was corroborated as to the making of the contemporaneous oral agreement, and as to its terms by a witness who was present when the writing was executed and by proof that the defendant has remained

in possession of the land thirty-six years under an arrangement by which his right to insist on a crossing and the duty of the plaintiff to construct one were suspended. Under the testimony the establishment of a crossing was distinctly a part of the consideration, and until established there was no right of possession.

The judgment is affirmed.