J. W. McCann, Appellant, v. E. W. Clark, Barnes Brothers, Clyde Barnes, Charles Barnes and H. H. Northrup, Appellees.

Contracts: EXCHANGE OF PROPERTIES: BREACH: EVIDENCE: DIRECTION
1 OF VERDICT. On appeal from a directed verdict the appellate court will give to the evidence the most favorable construction of which it is fairly susceptible in favor of the party against whom the ruling was made, and if it appears that the party was entitled to any relief under the evidence against any of the defendants the ruling will be reversed. In this action based upon alleged breach of contract in an exchange of certain goods for specific real property, the evidence tends to show that different and better land was pointed out to plaintiff than that which defendant contracted to convey and for which the goods were delivered. *Held,* that this evidence entitled plaintiff to damages regardless of the question of fraud and deceit and a verdict should not have been directed.

Same: BREACH OF CONTRACT: MISTAKE: BURDEN OF PROOF. The de-
2 fense to an action for breach of contract to convey specific land that the wrong land was pointed out to plaintiff through a mere mistake, that there was not a meeting of minds and hence no enforceable contract, is an affirmative defense and the defendant has the burden of establishing the same.

Same: CONTRACTS: RATIFICATION. One for whose benefit a contract is
3 made, though by an unauthorized agent, cannot retain the benefits of the contract and still refuse to make good the consideration.

Same: PRINCIPAL AND AGENT: LIABILITY OF AGENT. Where one acts in
4 good faith merely as an agent he is not liable for the breach of his principal; but if he undertakes to represent his principal without authority in the making of a contract, and the principal refuses to ratify his acts, he may be required to make good the contract or respond in damages.

Same: JOINT AND SEVERABLE LIABILITY: SUBMISSION OF CAUSE. Plain-
5 tiff was not required to make out a cause of action for a joint recovery against all of the defendants to entitle him to go to the jury; it was sufficient if his evidence sustained recovery against one or more of them, whether the action rested upon contract or sounded in tort.

**Appeal:** DISMISSAL AS TO ONE RESPONDENT: EFFECT. The dismissal of
6   the appeal by appellant as to one of the defendants was not ground
for dismissing it as to any one or all of the other defendants, but he
was entitled to proceed as to all others.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF,
Judge.

TUESDAY, OCTOBER 6, 1914.

ACTION at law upon a contract for the exchange of a stock
of merchandise for a tract of land. The material facts are
sufficiently stated in the opinion. At the close of the testi-
mony the court directed a verdict for all of the defendants,
and from such order and the judgment entered thereon the
plaintiff appeals.—*Reversed.*

*A. A. McGarry,* for appellant.

*F. H. Helsell,* for appellee E. W. Clark.

*Hunn & Jones,* for appellees Barnes.

H. H. Northrup, *pro se.*

WEAVER, J.—Plaintiff alleges that, in the spring of the
year, 1911, he was the owner of a stock of merchandise of the
value of $7,500 at the town of Cummings, Iowa, and at the
same time the defendants Barnes were in business as real
estate agents and brokers at Des Moines, Iowa, and had asso-
ciated with them in some capacity the defendant Northrup.
He further avers that the defendants Barnes and Northrup
represented to him that they were agents of the defendant
Clark, who was the owner of eighty acres of land in Jasper
county, which he desired to exchange for merchandise, and
thereby induced him to go with Clyde Barnes and Northrup to
visit and inspect this land which they said belonged to Clark.
The land so shown to him was of good quality and value, and,

believing and relying upon such representation, he entered into a contract for the exchange of his said stock of goods for said land and delivered said stock to said defendants, who took and retain possession thereof, but that said defendants, though due demand has been made therefor, have neglected and refused to convey to him the land which has been exhibited and pointed out to him by Barnes and Northrup. He further claims that Clark did not and does not own the land so shown him, and has no power or authority to sell or convey the same. By reason of said alleged wrong and default of the defendants, plaintiff claims to have been damaged to the full extent of the value of the merchandise so turned over to the defendants, and he asks a verdict therefor in the sum of $7,500.

Separately answering, the defendant Clark admits that he owned a tract of land in Jasper county, which he desired to sell or exchange for other property, admits that a contract was entered into in his name by the defendant Northup with the plaintiff for the exchange of said land for plaintiff's stock of goods, but denies that Northrup had any authority to sign said Clark's name to such writing. He admits that Barnes and Northrup showed plaintiff certain land as being the tract owned by him, and says they did it honestly, believing they were stating the truth. Thereafter, he says, being informed that the trade could be made he executed a deed of the land to plaintiff, and delivered it to Barnes Bros. as the agents of the latter. Later he learned that a mistake had been made in pointing out the land to plaintiff, and thereupon he made a bill of sale of the goods back to the plaintiff and placed it in the hands of Barnes Bros., authorizing or directing them to give plaintiff the option to confirm the exchange as already made or agreed upon, taking the land actually owned by him, or, if he so elected, the exchange might be abandoned and the bill of sale to the goods delivered to the plaintiff. Said defendant further alleges that plaintiff was then indebted beyond his ability to pay, and that, with one Glynn and one Casady

representing some of his creditors, a conspiracy was entered into between them to bring about this exchange of property, and thus get rid of the stock of goods in a manner to satisfy the claims held or controlled by said Glynn and Casady and to cheat and defraud his other creditors, and thereby involve the defendant in burdensome litigation, and that the contract so obtained ought not to be enforced. Other matters are stated in the answer, but further reference thereto is not material to the consideration of the appeal. The defendants Barnes and Northrup also answer, denying the plaintiff's claim.

The one question on this appeal is whether the plaintiff made a case which he was entitled to have submitted to the jury. Where a verdict has been directed below, it is elementary

1. CONTRACTS: exchange of properties: breach: evidence: direction of verdict. that this court is required to give to the testimony offered the most favorable construction of which it is fairly capable in behalf of the party against whom the ruling appealed from was made. In this case no testimony was offered on the part of the defendants or any of them. Turning, then, to the testimony on the part of plaintiff, and applying thereto the rule above stated, we find that it tends to show the following state of facts: Plaintiff owned the stock of goods in question and desired to sell or exchange it for other property. Glynn and Casady represented certain banks who held claims against him, and they had recently taken from him a chattel mortgage on the stock to secure the payment of $1,300, but the mortgage had not been recorded. Plaintiff requested Casady to find him a customer for the goods, and Casady mentioned the fact of such opportunity to one of the Barnes brothers, who were in the real estate business at Des Moines. Barnes informed Casady that he had or knew a piece of land in Jasper county, and he thought he could get its owner to put it into a deal of that kind, and that he would take the matter up with him and ascertain about it in a day or two. Later Barnes reported that they were ready to negotiate, and the defendants Clyde Barnes and Northrup invited plaintiff to go with them

and inspect the land. Plaintiff had never seen the land and knew nothing of its real character. The evidence tends to prove, and it is practically admitted, that Barnes and Northrup did not show him the land owned by Clark, but pointed out to him the adjoining eighty-acre tract as the property which they could put into the exchange. The land thus exhibited was much the more valuable. The tract shown was good farming land, but the tract owned by Clark was low and wet and threaded by the winding course of the Skunk river. There is also evidence that Barnes and Northrup, or one of them, said to plaintiff that he knew the land, and that it was worth the price they put upon it—$80 per acre. Plaintiff, being satisfied with the property shown him, expressed his willingness to make the exchange, and on the following day Clyde Barnes and Northrup appeared at Cummings, where they met plaintiff and Casady for the purpose of closing the deal. Northrup and Clark are both residents of Sioux Rapids, Iowa, and the proved facts and the guarded statements in Clark's answer were sufficient to justify the inference that Northrup was Clark's agent and representative in the transaction, though the answer denies that he was authorized to sign Clark's name to the written contract. These negotiations resulted in an agreement by which Clark was to convey the land to plaintiff, subject to a mortgage of $1,500, and plaintiff was to transfer to Clark the stock of goods free from incumbrance. A written contract was prepared by Casady and executed in the following form:

This memorandum of agreement made and entered into this 17th day of April, 1911, by and between E. W. Clark of Sioux Rapids, Iowa, party of the first part, and J. W. McCann, of Cummings, Iowa, party of the second part, witnesseth: The party of the first part has this day sold to second party the following described real estate, to wit: The north half (N. ½) of the northwest quarter (N. W. ¼) of section twenty-four (Sec. 24), township seventy-nine (Tp. 79), range twenty (20) Jasper county, Iowa, subject to a mortgage of fifteen hundred ($1,500.00) dollars, with interest from this date at six per

cent. (6%) for and in consideration of the above and fore-going described land, the second party has this day sold and conveyed, this day by bill of sale free and clear of all liens and incumbrances, a certain stock of general merchandise and fixtures, as described in said bill of sale, located in the town of Cummings, Warren county, Iowa, in what is known as the Jackson Smith building, in said town. First party agrees to convey the Jasper county land to second party, by good and sufficient warranty deed, and to furnish second party with a good and merchantable abstract of said land, subject only to the fifteen hundred ($1,500) dollars mortgage herein named. The lease now on said farm for the current year to be assigned to the second party for this contract, and the same to be done as a part of the consideration herein. Said deed to said land to be delivered on or before April 25th, 1911. Said abstract to be delivered for examination within the next thirty days from said date. Clyde Barnes hereby agrees to the delivery of said deed and abstract as per the terms of this contract. This contract is made binding upon their respective heirs and assigns of each of the parties hereto.

E. W. CLARK,<br>By H. H. Northrup.<br>J. W. McCANN.

Witness to contract: J. N. Cassady.

To deliver deed and abstract: Clyde Barnes.

The occasion for the signature of Barnes to the contract was as follows: When Northrup signed the name of Clark to the contract, Mr. Casady, who had agreed to release the chattel mortgage, raised the point that Northrup was a stranger to him, and that question might thereafter be raised whether such signature was made with the proper authority, but said that he knew Barnes, and knew him to be responsible, and, if the latter would guarantee the delivery of deed and abstract of title, they would proceed. To this Barnes consented and affixed his name to the paper. This being done, plaintiff made and executed a bill of sale of the stock of goods to Clark, and the same was delivered to Barnes. At the same time Casady surrendered the chattel mortgage securing the debt to the banks and gave it to Barnes. Then Barnes and

Northrup went to the store with the plaintiff, who there surrendered to them the keys, and Northrup or Barnes gave them to one Zilla Misner, who had been a clerk in the store, and at his request she received them and undertook to stay in the store for a few days until the arrival of a man who would be sent there to assume charge. Plaintiff has not since had possession of or exercised any dominion over the goods. Several days later Barnes, Northrup, and Clark appeared at the bank, where Casady was employed, and in the course of conversation Barnes told Casady that a mistake had been made in pointing out the land to plaintiff, and expressed a desire to fix the matter satisfactorily. Casady expressed the thought that Clark better destroy the bill of sale given and let the deal be rescinded or abandoned. Clark responded that this could not be done, because he had recorded the bill, but he would execute a bill of sale back to plaintiff. Casady prepared a bill of sale ready to be executed by Clark, but informed the latter that he had no authority from plaintiff to agree to such settlement, but would advise plaintiff to accept it. Clark did not then execute the bill of sale, and the parties present agreed to postpone further consideration until the next morning, when they would meet at the Barnes Bros.' office in Des Moines; Casady undertaking to notify plaintiff and secure his attendance. Casady and plaintiff were on hand at the appointed time and place, but Clark did not appear. Barnes and Northrup, who were there, reported that Clark had gone out of town on other business, and had not authorized them to make any settlement for him, and nothing was then accomplished in the matter. Plaintiff returned to the Barnes office on the evening of the same day, again on the following morning, and still again two or three days later, and on neither occasion found Clark. At the last call he was informed that Clark had returned to his home in Sioux Rapids, and shortly afterward this action was begun. The deed to the land has never been delivered to plaintiff, nor, so far as the evidence shows, has it ever been tendered to him. It does appear that,

on the day the contract of exchange was made, plaintiff assigned his interest therein to Glynn, who held the same as security for plaintiff's debt to the banks in place of the mortgage which had been surrendered to the defendants. Some days after the failure of the parties to get together at the Barnes office, Clark executed a deed in blank and placed it in the hands of Clyde Barnes, who offered it to Glynn. The offer was not accepted. It was not accompanied by any offer to return the chattel mortgage which had been surrendered to defendants or by a bill of sale of the goods. This showing is wholly without dispute; the defendants offering no testimony in their own behalf. For the purposes of this appeal, such showing must be accepted as true, or, at least, that the jury might properly have found it to be true.

Upon such record we are unhesitatingly of the opinion that the trial court erred in directing a verdict for the defendants. It is probable that the petition fails to allege a cause of action based upon fraud or false representations, but that is immaterial if it states facts upon which plaintiff is entitled to a judgment of any kind against any of the defendants. That it does state grounds for the recovery of damages against some or all of the defendants, and that there is evidence tending to sustain the same, is not open to reasonable doubt. Let us assume, for the purposes of this discussion, that there was no intention to deceive the plaintiff, and that Barnes and Northrup honestly believed the more valuable tract of land was the one owned by Clark, yet it remains true that this better land, and not the inferior tract, is what they promised and undertook to convey to plaintiff in exchange for his goods, and it was in consideration of this land, and no other, that they took and received the goods from him and still retain them. He has parted with his goods; he has not received, and defendants cannot give him, the promised consideration; and it would be an unwarranted impeachment of the efficiency and justice of the law to say he may not recover compensation in damages.

If the pointing out of the wrong land were a mere mistake, and defendants, on being confronted with the true condition, had with reasonable promptness returned or tendered a return of the goods, and, when sued on the contract, had pleaded and relied upon the proposition that the minds of the parties had never met, and therefore no enforceable contract had ever been made, and such defense were established by the evidence, there could be no recovery of damages, but such plea is in the nature of an affirmative defense, and the burden thereof would be upon the defendants, and not upon the plaintiff, to negative it. If plaintiff and his witnesses are to be believed, and their credibility was for the consideration of the jury, when the facts became known to him and Casady and Glynn, they sought to obtain an adjustment of the matter with the defendants, and, notwithstanding the promise of Clark to meet them the following day for that purpose, he failed to keep his engagement and left the city, and it was only after several days' waiting without avail for him to indicate his purpose that suit was begun. It makes little difference whether there is any direct evidence that Clark authorized Northrup to sign his name to the written contract.

2. Same: breach of contract: mistake: burden of proof.

The record, as we have already said, does tend to show that Northrup did have authority to negotiate the deal, and, if so, his principal cannot accept and retain the benefit of the bargain and refuse to make good the promised consideration. Again, Clyde Barnes made himself a party to the transaction as a guarantor of performance by Clark, and, even if Clark should escape liability, it does not follow that Barnes may not be held upon his guaranty. Whether any liability rests upon Northrup depends on the circumstances as they may appear on the final trial.

3. Same: contracts: ratification.

If he was merely the agent of Clark, and acted in good faith toward the plaintiff, no recovery can be had against

him, but if it. should be found that he undertook to repre-
sent and bind Clark without authority, and
Clark refuses to ratify his acts in that re-
spect, then, upon familiar principles, he will
himself be bound to make good the contract or respond in
damages. 2 Clark & Skyles' Agency, page 1259.

4. Same: princi-
pal and agent:
liability of
agent.

It is not necessary that plaintiff should make a case for
a joint recovery against all the defendants in order to be
allowed to go to the jury. It is enough, to prevent his being
thrown out of court, that he make sufficient
showing to sustain a recovery against any
one or more of them, and this is true whether
the action be *ex contractu* or *ex delicto.*

5. Same: joint
and several
liability: sub-
mission of
cause.

*Young v. Gormley,* 119 Iowa, 548; *Lull v. Bank,* 110 Iowa,
537; *Boswell v. Gates,* 56 Iowa, 143; Code, sections, 3773, 3774.
Quite in point, see *Aughey v. Windrem,* 137 Iowa, 319.

The foregoing sufficiently indicates our reasons for hold-
ing that plaintiff was entitled to go to the jury upon the case
made by his own testimony.

It must be understood that, in thus disposing of the case,
we do not attempt to pass upon the merits of the claim in suit
or hold that the truth of any of the matters alleged in the
petition has been established as a matter of law. Our conclu-
sion goes only to the proposition that the allegations and evi-
dence on part of the plaintiff were such as to entitle him to a
submission of the issues to the finding of the jury. So holding,
it follows that the judgment and order appealed from must be
vacated, and the cause remanded to the district court for a
new trial.

The appellee Clark has moved to dismiss the appeal on the
ground that plaintiff has dismissed as to the defendant North-
rup, and for that reason cannot further prosecute the case
against the other defendants. The record
relied upon does not clearly show the alleged
dismissal, but, if it did, it could not affect
the appeal as to Northrup, and would have no effect to deprive

6. Appeal: dis-
missal to one
respondent:
effect.

plaintiff of his right to proceed with the case as against all the other defendants.—*Reversed.*

LADD, C. J., and EVANS and PRESTON, JJ., concur.