INSURANCE AGENTS, INC., an Iowa
corporation, Plaintiff-Appellant,

v.

Mark ABEL, Defendant-Appellee.

No. 2–69157.

Court of Appeals of Iowa.

Aug. 30, 1983.

Curtis Hewett of Smith, Peterson, Beckman & Willson, Council Bluffs, for plaintiff-appellant.

James A. Pratt of Heithoff, Pratt & Heithoff, Council Bluffs, for defendant-appellee.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Plaintiff appeals from a judgment in favor of defendant in this suit to enforce a noncompetition agreement and for damages for the alleged breach of it. On appeal, plaintiff asserts that: (1) given the presumption that all written contracts are supported by consideration and the rule that courts will not inquire into the adequacy of consideration supporting a contract, the district court should not have held that the noncompetition agreement was not supported by consideration; and (2) the agreement was supported by consideration in that defendant received the benefit of continued employment, the defendant received a guaranteed market for resale of his company stock, and the agreement provided

defendant with the right to purchase additional shares of stock. We affirm.

Plaintiff is a large corporate insurance agency in Council Bluffs and is owned by 20 shareholders. The largest shareholder is Redlands Enterprises which owns 81% of the plaintiff. Redlands is in turn owned by the founders (or their descendants) of Insurance Agents, Inc. Defendant was the owner of a small insurance agency operating in the same area. In late 1977 defendant agreed to sell his insurance agency to plaintiff in exchange for shares of plaintiff's stock and other consideration. The parties entered into a sale agreement (hereinafter referred to as the 1977 agreement) which provided, among other things, that the defendant would not compete with plaintiff for a period of three years and that the defendant would be employed by plaintiff as an insurance agent for three years.

Defendant began working for plaintiff on January 3, 1978. The stock which defendant received from the plaintiff for the sale of his agency was not delivered until May 15, 1978 because the final sale price was based on a percentage of the insurance agency's commission income. Those calculations could not be performed at the date of closing without some difficulty. The defendant continued to work for the plaintiff as an insurance agent for over four years when he was terminated for reasons not relevant to this appeal. The noncompetition clause of the 1977 agreement had expired by the time defendant was released from plaintiff's employ.

Defendant had, however, signed another agreement with plaintiff shortly after his employment began. Plaintiff's president had asked him to enter into a "Corporate Stock Purchase Plan With Agreement Not to Compete" (hereinafter referred to as the 1978 agreement) as part of the process of delivering to him the shares of stock which he was to receive as payment for the sale of his insurance agency under the 1977 agreement. This agreement was a form agreement which the plaintiff's president nor-

mally offered to employees after they had been employed one year by plaintiff. The defendant's attorney had been presented a copy of that form agreement during the prior negotiations for the sale of defendant's insurance agency but it was not made a part of the 1977 agreement. No evidence was presented as to the exact date the 1978 agreement was signed but it was signed by the defendant sometime in the spring of 1978 before May 15, 1978 when he received the shares of plaintiff's stock. The 1978 agreement contained an additional noncompetition agreement which was to run for three years from the date of termination of defendant's employment with plaintiff. All the shareholders, with the exception of the majority shareholder Redland's Enterprises, were required to sign similar agreements.

Following defendant's termination, he reentered the insurance business on his own and allegedly took over some accounts he handled while in plaintiff's employ. Plaintiff commenced this suit to enforce the 1978 noncompetition agreement requesting an injunction and damages for business allegedly lost to defendant. The 1977 noncompetition agreement is not at issue here as all parties agree that its provisions were performed.

Trial was had below before the court without a jury. The trial court held that the 1978 noncompetition agreement was unenforceable because defendant had not received consideration for it. The trial court's holding while referring to both lack of consideration and adequate consideration appears to be in fact that there was no consideration.[1]

I. Scope of Review. This is an action upon a contract seeking both injunctive relief and monetary damages. The case was tried in equity without objection. We treat it here as it was treated in the trial court. *Atlantic Veneer Corporation v. Sears,* 232 N.W.2d 499, 502 (Iowa 1975); *Brammer v. Allied Mutual Insurance Company,* 182 N.W.2d 169, 172 (Iowa 1970); *Bjork v. Dairyland Insurance Company,* 174 N.W.2d 379, 382 (Iowa 1970).

Our review of this equitable action is de novo. Iowa R.App.P. 4. We review the facts as well as the law to determine rights anew from the credible evidence on issues properly presented and preserved. *In re Marriage of Full,* 255 N.W.2d 153, 158 (Iowa 1977). While we give weight to the findings of trial court, especially where the credibility of witnesses is involved, we are not bound by them. Iowa R.App.P. 14(f)(7); *Basic Chemicals, Inc. v. Benson,* 251 N.W.2d 220, 226 (Iowa 1977).

II. Plaintiff claims the trial court erred in ruling that the covenant not to compete contained in the 1978 agreement could not be enforced because the contract failed for lack of consideration. An employment contract containing a covenant not to compete requires consideration to be enforceable. *See Farm Bureau Service Co. of Maynard v. Kohls,* 203 N.W.2d 209, 212 (Iowa 1972). A new agreement not to compete in the same business, entered into after the sale of a business has been completed and the contract for the sale has been signed, requires new consideration. *Carruthers v. McMurray,* 75 Iowa 173, 177, 39 N.W. 255, 257 (1888). Whether the 1978 agreement is an employment contract as asserted by the plaintiff or an agreement not to compete entered into after the sale of business as asserted by defendant, it is clear that consideration to support the agreement must be shown if the plaintiff is entitled to relief.

[1]. Plaintiff initially argues that the trial court found consideration for the contract but ruled that consideration was inadequate to support the contract. At one point the trial court decision states "... that the non-compete or anti-competitive covenants contained in the stock purchase plan is not supported by *adequate consideration* ..." (emphasis added). This holding would seem to be at odds with the discussion on adequacy of consideration as a defense in the case of *Hart v. Hart,* 160 N.W.2d 438, 444 (Iowa 1968). Reviewing the trial court's decision which states at another point "there was no consideration for its (the 1978 agreement) execution," we believe that the trial court in fact held the agreement failed for lack of consideration. The nature of our review, moreover, renders any error harmless as we must make these determinations anew. Iowa R.App.P. 14(f)(7).

The agreement at issue is a written agreement and signed by both parties. "All contracts in writing, signed by the party to be bound or by his authorized agent or attorney, shall import a consideration." Iowa Code § 537A.2 (1981). This language establishes a presumption of consideration when the agreement sought to be enforced is in writing and signed by the party to be bound. *Lovlie v. Plumb,* 250 N.W.2d 56, 61 (Iowa 1977) (application of Iowa Code § 537A.3 (1973) to a written and signed deed); *Sisson v. Janssen,* 244 Iowa 123, 130, 56 N.W.2d 30, 34 (1952) (application of Iowa Code § 537.2 (1950), now § 537A.2, to a sales contract); *Beh v. Van Ness,* 190 Iowa 151, 154, 180 N.W. 292, 293 (1920) (application of Iowa Code § 3069 (1920), now § 537A.2, to a promissory note). "The want or failure, in whole or part, of the consideration of a written contract may be shown as a defense . . . ." Iowa Code § 537A.3 (1981). In addition to providing the plaintiff with a presumption of consideration, the defendant who relies upon the defense of lack of consideration where there is a written contract has the burden of proving there is none. *Sisson v. Janssen,* 244 Iowa 123, 130, 56 N.W.2d 30, 34; Iowa R.App.P. 14(f)(5). We must review the credible evidence presented at trial to determine if the defendant has established lack of consideration by a preponderance of the evidence. Iowa R.App.P. 14(f)(6); *Anderson v. Armstrong,* 264 N.W.2d 619, 620 (Iowa Ct.App.1978).

Either a benefit to a promisor or a detriment to a promisee constitutes consideration. *Doggett v. Heritage Concepts, Inc.,* 298 N.W.2d 310, 311 (Iowa 1980). A promise to do that which one is already obligated to do will not suffice as consideration. *Lovlie v. Plumb,* 250 N.W.2d 56, 57–58 (Iowa 1977). The defendant Mark Abel asserts that the sale of his insurance business to the plaintiff, Insurance Agents, Inc., was closed by the agreement of December 30, 1977 (the 1977 agreement). The defendant and plaintiff, both represented by counsel, had engaged in long and detailed negotiations during 1977. Although there was testimony that defendant knew of the "Corporate Stock Purchase Plan With Agreement Not to Compete," the defendant's attorney testified that it was not intended by the parties to be part of the 1977 sale of defendant's business agreement. The December 30, 1977 agreement further provided for employment of the defendant for three years with the plaintiff. When defendant became a stockholder pursuant to the 1977 agreement, he was entitled to the benefits of the resale/repurchase provisions in plaintiff's corporate bylaws. Defendant contends, and we think correctly, that the 1978 agreement extended to defendant no additional benefit nor caused the plaintiff to suffer any additional detriment or costs.

Where a contract contemplates the subsequent execution of a subsidiary agreement, the promises in such agreement are supported by the consideration of the original agreement. *Freese v. Town of Alburnett,* 255 Iowa 1264, 1271, 125 N.W.2d 790, 794 (1964) (an "extra work" order was an agreement contemplated under the provisions of the principal contract and therefore supported by consideration). The stock defendant received under the 1977 agreement was received after he signed the 1978 non-competition provisions. The defendant had an undisputed right to receive the stock under the 1977 agreement. Plaintiff's corporate president testified the purpose for the delay in the delivery of the stock was to compute the amount owed under the price formula agreed upon in the 1977 sale agreement. There was no subsequent agreement, such as that signed in 1978, contemplated by the parties in the 1977 agreement.

Plaintiff asserts the promise of continuing employment constitutes consideration for the covenant not to compete in the 1978 agreement. *Farm Bureau Service Co. of Maynard v. Kohls,* 203 N.W.2d 209, 212; *Orkin Exterminating Company v. Burnett,* 259 Iowa 1218, 1224, 146 N.W.2d 320, 324 (1966). While as a general legal principle it might be said that employment does provide consideration for a noncompetition agreement in an employment contract, here the defendant's employment was part of

the prior 1977 sale of business agreement. The sale of defendant's business was the major inducement to plaintiff to employ defendant. Plaintiff was obligated to employ defendant under the 1977 agreement for at least three years. The promise of continuing employment does not provide consideration for the 1978 agreement.

The plaintiff also asserts that the repurchase provisions of the 1978 agreement extends to the defendant benefits not otherwise found in the 1977 agreement thereby providing consideration for the 1978 agreement. The defendant points out that the plaintiff's corporate bylaws contain similar shareholders rights which the plaintiff became entitled to when the 1977 sale agreement was signed. Defendant Abel further asks the court to adopt the rule of *Topken, Loring & Schwartz v. Schwartz,* 249 N.Y. 206, 163 N.E. 735 (1928), which held that a contract under which a corporation agreed to repurchase a shareholder's stock upon the cessation of employment of that shareholder is not mutually binding and therefore lacking consideration. Iowa Code § 496A.5 (1981) limits a corporation purchasing its outstanding stock to making purchases only from surplus. If the corporation does not have any surplus, so the argument goes, the corporation cannot be required to purchase the stocks. Any agreement to repurchase stock, therefore, is illusory.

■ We note that decision may no longer be the law of New York (*see Murphy v. George Murphy, Inc.,* 7 Misc.2d 647, 166 N.Y.S.2d 290 (1957)), but find no need to reach the issue. The provisions in the 1978 agreement are substantially similar to the bylaws of the corporation. The bylaws were adopted in 1968 when the plaintiff was formed and had not been amended to the date of trial. The repurchase of stock and computation of price for stock provisions of the 1978 agreement restate the plaintiff's obligation to its shareholders under its corporate bylaws. As noted above, a promise to do that which one is already obligated to do will not provide consideration for a return promise. *Lovlie v. Plumb,* 250 N.W.2d at 57–58.

The plaintiff asserts the final benefit accruing to the defendant under the 1978 agreement was the right to purchase additional shares of plaintiff's stock. The relevant provision of the 1978 agreement provides:

> That a purchaser shall be allowed to purchase at any time between January 1st and April 15th of each and every year, on a pro rata basis with the then shareholders of the corporation, issued and outstanding capital stock of the corporation, as shall be offered for sale by any of the parties to this Agreement. The specific dates set out above may be waived....

■ Plaintiff's argument appears to be that this provision makes this contract a bilateral option contract as described in Corbin on Contracts (One Volume Edition) § 260 (1952). There, however, the promise made is binding upon the party granting the option. As a closer examination reveals here, the plaintiff is in fact not required to make any stock available for sale. The only rights this agreement extends to a shareholder is the right to purchase any stock the plaintiff's board of directors should chose to make available. Stock sold by other shareholders are also not necessarily available to the defendant because, as provided in the corporate bylaws, the shareholders must offer stock first to the corporation. Defendant's right to purchase plaintiff's stock in the future, therefore, is illusory and provides no consideration for the 1978 agreement.

■ III. The parties discuss whether the covenant not to compete in the 1978 agreement is reasonable as to time and area. A covenant not to compete contained in an employment contract must be reasonably limited both as to time and area. *Farm Bureau Service Co. of Maynard v. Kohls,* 203 N.W.2d 209, 211 (Iowa 1972). A court will enforce noncompetition covenants to the extent they are reasonably necessary to protect the employer's legitimate interests without imposing undue hardship on the employee. *Ehlers v. Iowa Warehouse Company,* 188 N.W.2d 368, 370 (Iowa 1971). It is not necessary for us to reach this issue,

however, because of our holding in Division II.

We find in our de novo review that the 1978 agreement entitled "Corporate Stock Purchase Plan With Agreement Not to Compete" is unsupported by consideration and, therefore, the covenant not to compete contained in that agreement is unenforceable.

AFFIRMED.