KRISTERIN DEVELOPMENT CO., an Iowa Corporation, Appellant,

v.

GRANSON INVESTMENT, a Partnership; Kenneth L. Grandquist, an Individual and Partner; Dale V. Nelson, an Individual and Partner; John L. Grandquist, an Individual and Partner; Loren Meggison, an Individual and Meggison Real Estate Incorporated, Appellees.

No. 85–293.

Supreme Court of Iowa.

Oct. 15, 1986.

John R. Hearn, Des Moines, for appellant.

R. Ronald Pogge of Hopkins & Huebner, P.C., Des Moines, for appellees Granson Inv., Kenneth L. Grandquist, Dale V. Nelson and John Grandquist.

Ronald L. Sutphin of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellees Loren Meggison and Meggison Real Estate Inc.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, WOLLE and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

This is a law action for damages based on an alleged contract for the sale of an apartment building, brought by plaintiff corporation Kristerin Development Co. (Kristerin), against the seller, defendant partnership Granson Investment (Granson), its partners, and its brokers, Loren Meggison and Meggison Real Estate, Inc. The controversy presents unusual issues of contract and partnership law. We granted further review to examine the court of appeals decision. The court of appeals held trial court was right in dismissing the action against the partners and brokers, and in sustaining Granson's motion for judgment notwithstanding the verdicts awarding compensatory and punitive damages on a fraud count, but erred in sustaining Granson's motion to direct a verdict against Kristerin on a breach of contract count. We affirm the court of appeals decision and remand to the district court.

The evidence presented in this case disclosed that in 1976 defendants Kenneth L. Grandquist, John Grandquist, and Dale V. Nelson formed Granson, the defendant partnership. The written partnership agreement executed at that time neither specified the business of the partnership nor designated the number of partners required to execute conveyances of partnership real estate.

In 1976 this partnership purchased from Robert G. and Viola Erickson a twelve-plex apartment building located at 3707 Grand Avenue in Des Moines. Before closing, Ericksons mortgaged the property to Marshalltown Savings and Loan Association. This mortgage contained a due-on-sale clause. The accompanying promissory note provided for decreasing penalties if paid off with funds from another lender before August 10, 1981.

In the summer of 1980 Granson retained defendant Loren Meggison, a licensed real estate broker, and his sales company, defendant Meggison Real Estate, Inc., to serve as its agent in selling the apartment building. Purchase negotiations with Kaser Development, Inc., of which Peter G. Kaser was president, broke down. Kaser Development, Inc., then formed a joint venture with plaintiff Kristerin, in which Robert Netteland was a principal, to acquire the property. These joint venturers intended to sell the apartments as condominiums. This new organization, K J Joint Venture (KJ), renewed the purchase negotiations.[1]

Several meetings followed, variously involving Netteland, Kaser, Loren Meggison, and Kenneth L. and John Grandquist. Granson wanted Kaser's personal guarantee on the contract. Kaser was determined that the deal be structured in a nonrecourse manner. KJ's evidence indicated Kenneth L. Grandquist, Granson's chief negotiator, waived the request for Kaser's personal guarantee at the conclusion of the negotiations; Granson presented conflicting testimony.

KJ retained attorney Harlan Hockenberg to draft the contract. After communications from Netteland and Meggison, Hockenberg modified an "offer" form to incorporate the alleged oral agreement of the parties.[2] This agreement was executed by

1. The interest of Kaser Development, Inc., and KJ in this litigation was assigned later to Kristerin, the sole plaintiff.

2. A letter from Meggison to Hockenberg outlined the terms of the proposed purchase. The letter stated a second nonrecourse mortgage would be held by Granson, and this provision was incorporated in the written instrument then drafted.

the principals for KJ and delivered to Granson, where it was signed by partners Nelson and John Grandquist.

There is another conflict in the evidence at this point. Granson introduced evidence to show the offer was placed on Kenneth L. Grandquist's desk for his approval, but he neither approved nor signed it, and it was removed from his desk and delivered to KJ without his consent. Kenneth L. Grandquist testified he would not have executed the document until Kaser agreed to be liable personally, and until KJ assumed responsibility for any prepayment penalty imposed by the savings and loan association.

Kristerin, on the other hand, introduced evidence to show that Meggison, Granson's agent, delivered the contract to KJ after it had been executed by two of the partners. When they noted the contract was not signed by Kenneth L. Grandquist, Netteland, Kaser, and Hockenberg each made separate telephone calls to Meggison for an explanation. Meggison told each of them Kenneth L. Grandquist did not want to sign because he was having marital problems, but that the partnership intended to be bound and the signatures of two partners would bind the partnership. Netteland further testified he telephoned Kenneth L. Grandquist, who told him, "[T]he deal is good. It only takes a couple of partners to bind it anyway, so don't worry about it."

There is little dispute that after the contracts were distributed the buyer and seller both engaged in activities that appeared to advance the objectives of the offer and acceptance. Granson furnished KJ with information on current tenants. Meggison, the seller's agent, obtained a necessary certificate of occupancy for KJ. Granson had the abstract continued and delivered to KJ for examination. KJ's attorney found an apparent defect in the title that took weeks to resolve, and involved a telephone call from John Grandquist to the attorney.

Finally, on December 4, 1980, Granson's lawyer wrote a letter to KJ, in care of Kaser, that referred to the title problem and the savings and loan prepayment pen-

alty, and informed KJ of Granson's "cancellation of the Offer to Buy dated September 10, 1980." KJ's attorney "rejected" this purported cancellation. Kristerin's subsequent efforts to reach a different agreement were unsuccessful.

Kristerin also sought to show that during this interval Kenneth L. Grandquist was negotiating with others for the sale of the apartment complex. Kristerin thus sought to create the inference Granson was attempting to bind KJ to the contract it held while still seeking a better sale on the basis that KJ's contract could be declared not binding, absent Kenneth L. Grandquist's signature.

January 4, 1983, Kristerin sued Granson and its partners for breach of contract, praying for damages and for attorney fees as provided by the contract. This petition was amended to allege, alternatively, misrepresentation by the same defendants, and by Loren Meggison and Meggison Real Estate, Inc.[3] This count asserted these defendants represented that less than three of the Granson partners could legally bind the partnership, Granson and its partners agreed to be and were legally bound by the contract, and other asserted misrepresentations not relevant here. Kristerin alleged these statements were untrue, were made by defendants with reckless disregard for their truth or falsity, and were relied on by KJ to its detriment. Kristerin prayed for compensatory and punitive damages.

At the conclusion of Kristerin's evidence, trial court directed a verdict in favor of the individual partners and for Loren Meggison. It directed a verdict in favor of Granson on the contract count, reasoning that all three partners were required to execute the contract before the partnership would be bound by the written agreement. After all the evidence was submitted, trial court directed a verdict in favor of Meggison Real Estate, Inc., on the ground the buyer did not rely on representations made by Meggison after it obtained the same information from Kenneth L. Grandquist.

3. An additional negligence count was with- drawn by Kristerin in the course of trial.

Submission of the fraud count was bifurcated with respect to punitive damages. After the jury returned a $100,000 verdict for Kristerin, additional evidence was submitted relating to Granson's financial condition. The jury then returned a plaintiff's verdict for $20,000 in punitive damages.

Trial court sustained Granson's motion for judgment notwithstanding these verdicts,[4] and overruled its motion for new trial.

Appealing, Kristerin contends trial court erred in dismissing the breach of contract count, in entering a judgment notwithstanding the verdicts in favor of Granson, in directing verdicts for Loren Meggison and Meggison Real Estate, Inc., in dismissing its claims against the individual partners, and in not including loss of profits as a distinct element of damages. Granson "conditionally" cross-appeals, asserting that in the event trial court's ruling granting judgment notwithstanding the verdicts is set aside, it should be granted a new trial on the fraud count.

We transferred the case to the court of appeals. That court reversed and remanded, holding trial court erred in determining there was no contract as a matter of law and in dismissing the partners as parties in the contract action. The court of appeals further held trial court committed no error when it sustained the motion for judgment n.o.v. on the fraud count and in dismissing the action against Meggison and his company. We agree. To the extent necessary, we discuss these issues in the divisions that follow.

I. *Directed verdict on the contract count.*

Kristerin contends trial court erred in determining, as a matter of law, that no contract was created. At trial, Granson contended its partners had an oral agreement that all three partners' signatures were required to bind the partnership on a real estate conveyance. Trial court apparently found Granson's evidence persuasive

on this point and directed a verdict for the partnership on the contract claim.

Implicated here is the Uniform Partnership Act, Iowa Code chapter 544. Section 544.9 provides:

1. Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Iowa Code § 544.9(1) (1979). Further, Iowa Code section 544.10 states that real property held by the partnership may be conveyed by any partner on behalf of the partnership. The partnership, however, may recover such property *"unless* the partner's act binds the partnership under the provisions of section 544.9[1]." *Id.* § 544.10(1) (emphasis added).

█ Under these provisions one partner can bind the partnership to a contract if he or she appears to act in the usual course of the partnership business. *See Owens v. Palos Verdes Monaco,* 142 Cal.App.3d 855, 864–65, 191 Cal.Rptr. 381, 386–87 (1983); *Ball v. Carlson,* 641 P.2d 303, 305 (Colo.Ct. App.1981); *Stone-Fox, Inc. v. Vandehey Development Co.,* 290 Or. 779, 785, 626 P.2d 1365, 1370–71 (1981); *see also Hartford Coal Co. v. Helsing,* 220 Iowa 1010, 1020, 263 N.W. 269, 274 (1935) (stating similar rule under Iowa common law). A contract to sell partnership real estate is no exception:

[A] contract executed by one partner alone to sell partnership real estate is binding on the other partners provided the partnership is in the business of buying or selling real estate. . . .

R.Civ.P. 118.

---

**4.** Trial court did not specify on which of the several grounds it relied, as required by Iowa

*Owens,* 142 Cal.App.3d at 865, 191 Cal. Rptr. at 387 (quoting *Ellis v. Mihelis,* 60 Cal.2d 206, 217–18, 384 P.2d 7, 14, 32 Cal. Rptr. 415, 422 (1963)) (emphasis omitted).

■ Iowa Code section 544.9(1) invites a two-step analysis in these situations. First, the fact finder must determine whether the partner or partners executing the agreement apparently acted to carry on the partnership business in the usual way. An affirmative finding on this step ends the inquiry unless, in the second step of the analysis, it is shown the person with whom the partner was dealing knew the latter in fact had no authority to bind the partnership.

■ An act that is done "for apparently carrying on in the usual way the business of the partnership," Iowa Code § 544.9(1), is an act in furtherance of the partnership business. *See Inland Real Estate Corp. v. Christoph,* 107 Ill.App.3d 183, 188, 63 Ill. Dec. 9, 437 N.E.2d 658, 668 (1981). Moreover, the "apparent scope of the partnership business depends primarily on the conduct of the partnership and its partners and what they cause third persons to believe about the authority of the partners." *Blackmon v. Hale,* 1 Cal.3d 548, 557, 463 P.2d 418, 423, 83 Cal.Rptr. 194, 199 (1970).

■ We already have noted that here the partnership agreement did not state the business of Granson. Nonetheless, there is substantial evidence in this record upon which the jury could have found Granson was in the business of buying and selling real estate. Netteland testified John Grandquist stated the partnership was in the real estate business. Partner Kenneth L. Grandquist conceded on cross-examination that Granson was formed to buy and sell the apartment building.

Granson suggests the transaction was not in the usual course of business because the 3707 Grand Avenue property was the only asset of the partnership during the

relevant period.[5] If, however, the business of Granson was selling this property, the jury could have found the two partners were carrying on business in the usual way when they executed the "offer." *See Owens,* 142 Cal.App.3d at 865–67, 191 Cal. Rptr. at 387–88; *Ball,* 641 P.2d at 305; *Stone-Fox, Inc.,* 290 Or. at 790–91 & n. 7, 626 P.2d at 1371 & n. 7. In short, the fact this apartment may have been Granson's only asset at the time of these events would not be fatal to Kristerin's claim.

In our analysis we next explore whether, as a matter of law, the two signing partners in fact did not have authority to bind the partnership and KJ knew of that lack of authority. Granson sought to show the three partners had an oral agreement that all partners would be required to execute a contract for sale of real estate in order to bind the partnership. There was scant evidence to show this agreement was communicated to KJ at any relevant time. Moreover, Kristerin produced direct testimony that two partners' signatures were sufficient to bind the partners to the contract. Pertinent here is the reasoning of the California Supreme Court:

Sound public policy dictates that a partnership must inform those who deal with its members in the course of the partnership's business of any special restrictions on a particular partner's authority. A person dealing with a partnership usually is in no position to know of special agreements between the partners, and thus cannot be charged with knowledge of such agreements *absent specific notice.*

*Blackmon,* 1 Cal.3d at 558, 463 P.2d at 423, 83 Cal.Rptr. at 199 (emphasis added); *cf. Sutton v. Weber,* 127 Iowa 361, 364–65, 101 N.W. 775, 777 (1904) (Partner executing agreement informed plaintiff that contract was subject to approval of absent partner. The latter's failure to approve agreement could provide good defense to enforcement

---

5. Although the 3707 Grand Avenue property may have been the only asset of Granson at the time of these events, Kenneth L. Grandquist testified the partnership would have bought and sold more real estate if it had found desirable property. The record shows that since the time of these events Granson has acquired more property. Further, the evidence disclosed Kenneth L. Grandquist has been involved in the real estate sales business for many years.

of contract because plaintiff had knowledge of restriction of one partner's authority to bind partnership.).

■ We hold the contract count should have been submitted to the jury and trial court erred in directing a verdict for Granson on this cause of action.

At trial Granson made several alternative arguments for holding no contract existed as a matter of law. Trial court rejected the arguments as did the court of appeals. On further review Granson reasserts those arguments and contends the court of appeals erred in ordering a new trial on the contract claim. We disagree.

■ In order to be bound, the contracting parties must manifest a mutual assent to the terms of the contract, and this assent usually is given through the offer and acceptance. *Hayne v. Cook*, 252 Iowa 1012, 1021, 109 N.W.2d 188, 192 (1961). Whether such assent has been given here is determined *objectively*. *See McCarter v. Uban*, 166 N.W.2d 910, 913 (Iowa 1969).

Granson contends such assent has not been given. It argues no contract exists because the acceptance was not "delivered" to KJ. We have said that delivery is

a matter of intent. Such intent may be actual or constructive. ... [I]t actually refers to the communication or notification of an acceptance to the offerer. Ordinarily it is essential to the operation and validity of ... a written contract, but ... we have held that neither manual transfer of the instrument nor any particular form of ceremony is necessary.... It may be by acts without words, or words without acts, or by both words and acts, *it being necessary merely that the grantor or promisor intends actually or constructively that the instrument shall become operative and take effect as a valid obligation.*

*Hayne*, 252 Iowa at 1022, 109 N.W.2d at 193 (emphasis added).

■ We indicated in our above discussion that Kristerin presented substantial evidence of Granson's intent to be bound. Granson's agent, Meggison, returned the

*executed* "offer" to KJ. Moreover, in addition to evidence of Granson's actual representations that it was bound, the record shows that between September and December 1980 Granson made efforts to facilitate a closing of the real estate sale. We hold the record contains sufficient evidence to generate a jury question on this issue.

Granson next asserts no contract was made because there was a failure of consideration. The offer set out the financial terms of purchase, which included $100 earnest money to be held by Meggison. Meggison, however, did not collect the funds upon Granson's acceptance. Granson argues because the earnest money was not collected a contract was not formed.

■ Granson confuses the issue. A "failure of consideration" is not synonymous with a "lack of consideration." *See* 1 A. Corbin, *Corbin on Contracts* § 133 (1963). The former does not prevent the formation of a contract whereas the latter may do so. *Id.* A failure of consideration may sometimes serve as a defense to enforcement of an existing contract. *Union Story Trust & Savings Bank v. Sayer*, 332 N.W.2d 316, 322–23 (Iowa 1983). The alleged failure of consideration ordinarily must be total to serve as a complete defense to a breach of contract claim. *Id.* at 322.

■ We presume a written, signed agreement is supported by consideration. Iowa Code § 537A.2; *see Insurance Agents, Inc. v. Abel*, 338 N.W.2d 531, 534 (Iowa Ct.App.1983). Granson had the burden to prove a lack of consideration. *See Hubbard Milling Co. v. Citizens State Bank*, 385 N.W.2d 255, 259 (Iowa 1986); *Insurance Agents, Inc.*, 338 N.W.2d at 534.

Consideration may take many forms. *Recker v. Gustafson*, 279 N.W.2d 744, 749 (Iowa 1979). In this case the offer and acceptance contained mutual promises as consideration to support an agreement. KJ promised to pay $600,000 in exchange for Granson's promise to transfer the property. The court generally will not inquire

further into the "adequacy" of the consideration given.

The $100 earnest money was part of KJ's $600,000 consideration for the purchase. The record contains no evidence Meggison ever attempted to collect the money from the buyer after the seller accepted the offer. We need not explore the issue whether the seller waived the earnest money requirement. In these circumstances failure to pay $100 of a $600,000 contract price could not constitute a total failure of consideration. Consequently, it could not serve as a total defense to plaintiff's contract action. *See Union Story Trust & Savings Bank*, 332 N.W.2d at 322–23.

Granson finally contends the written instrument was too incomplete as a matter of law to constitute a contract. We again agree with the court of appeals that the record contains sufficient evidence to generate a jury issue. Ordinarily, we make every effort to avoid holding as a matter of law that an agreement is too uncertain or incomplete to constitute a contract. *See Palmer v. Albert*, 310 N.W.2d 169, 172 (Iowa 1981).

We briefly address a subsumed issue for the guidance of trial court on remand. We find the evidence in the record now before us was sufficient to submit to the jury the issue of the buyer's lost profits as the result of the alleged breach of contract. Although the "lost profits" claimed here are more difficult to project than those generated by an ongoing business, several Iowa decisions are instructive. *See Page County Appliance Center v. Honeywell, Inc.*, 347 N.W.2d 171, 178 (Iowa 1984); *Harsha v. State Savings Bank*, 346 N.W.2d 791, 798–99 (Iowa 1984); *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 213 (Iowa 1980).

II. *Directed verdict for individual partners.*

Defendants' motion for directed verdict, made at the conclusion of Kristerin's evidence, was made on behalf of Granson and the individual partners. No separate grounds were advanced on behalf of the partners. Trial court, without assigning a reason and without a separate ruling on each ground as required by Iowa Rule of Civil Procedure 118, directed a verdict for the partners.

Under Iowa Code section 544.15 each partner is jointly and severally liable for the obligations of the partnership and may be joined as a defendant with the firm. Assuming a judgment against a partnership, due process would require a plaintiff to bring a new action on the original cause against partners not served or appearing in the original suit. *See Cody v. J.A. Dodds & Sons*, 252 Iowa 1394, 1398, 110 N.W.2d 255, 257 (1961); *see also* Iowa R.Civ.P. 4.

Kristerin in this case did join the partners and in the circumstances their fate rode with the fate of the partnership. Trial court erred in directing the verdict in their favor.

III. *Directed verdict for Loren Meggison and Meggison Real Estate, Inc.*

Trial court directed verdicts in favor of Meggison and his company on the fraudulent misrepresentation count. Kristerin assigns this as error. We disagree.

In reviewing the court's rulings, we examine the evidence in a light most favorable to the party opposing the directed verdict motions. Iowa R.App.P. 14(f)(2). Kristerin had the burden to show the five elements of fraud by "a preponderance of clear, satisfactory, and convincing evidence." *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984). Those elements are: "(1) a material misrepresentation, (2) made knowingly (scienter), (3) with intent to induce the plaintiff to act or refrain from acting, (4) upon which the plaintiff justifiably relies, (5) with damages." *Id.* (quoting *Beeck v. Kapalis*, 302 N.W.2d 90, 94 (Iowa 1981)).

We agree with trial court's conclusion, as did the court of appeals, that the record does not contain substantial evidence from which the jury reasonably could have found by a preponderance of the

clear, convincing, and satisfactory evidence that KJ justifiably relied upon Meggison's alleged representations. KJ does not dispute it confirmed Meggison's representations with partner Kenneth L. Grandquist, a representative of the principal, Granson. Nor has Kristerin ever contended Meggison made representations other than those also made by Grandquist.

In *Riley v. Bell*, 120 Iowa 618, 95 N.W. 170 (1903), we wrote:

> [A]n agent is not chargeable with personal responsibility where it appears that he has acted in good faith within the general scope of his authority, *and in making representations has acted simply as the mouthpiece of his principal.* . . .

*Id.* at 623, 95 N.W. at 171 (emphasis added). Here there is no real dispute that Meggison was acting as a "mouthpiece" for his principal, Granson. Even Netteland conceded at trial it was not necessary to rely on Meggison's representations after Kenneth L. Grandquist made the same representations.

Trial court committed no error in directing these verdicts for the above reason, as well as the reasons discussed in the division that follows.

IV. *Judgment for Granson notwithstanding the verdicts.*

Following the jury verdicts awarding Kristerin compensatory and punitive damages, trial court nonetheless rendered judgment for Granson on the partnership's motion. Kristerin assigns this as reversible error.

The alleged misrepresentation submitted to the jury was contained in instruction nine, which stated that "[p]laintiff claims the defendant falsely represented that there was a binding contract and the transaction would close in substantial compliance with the contract." This part of the instruction went unchallenged. In the course of trial clashes in chambers, Granson claimed the action lay in contract, not in tort, and Kristerin's counsel volunteered that if the court permitted the case to go to the jury on the contract count he would dismiss the negligence and fraud counts.

In the posture of this case, we find the fraud case should not have been submitted to the jury, and thus there was no error in trial court's granting judgment n.o.v. Underlying Kristerin's alternative fraudulent misrepresentation cause of action is the premise that for some reason a contract would not be binding on Granson unless the written agreement was executed by all three partners. What we have written in division I discloses there is no legal support for this premise.

Upon trial after remand on the contract count, a crucial issue will be the mutual assent of the parties to the terms of the written "offer." A jury finding that Kenneth L. Grandquist in fact made the representation in controversy would resolve the issue of mutual assent, regardless of any undisclosed intent at the time he made it. Clearly, in all the circumstances of this case, the partnership could not deny an enforceable contract was created by the written assent of two partners and the oral assurance of the remaining partner that the signatures of two partners bound the partnership. A jury finding that Grandquist did not make the representation would dispose of any claim there was ever a basis for claiming fraudulent misrepresentation on the part of the partnership. We agree with the court of appeals that the record does not contain substantial evidence from which the jury reasonably could have found by a preponderance of the clear, satisfactory, and convincing evidence the existence of material misrepresentation amounting to fraud.

We affirm the ruling of the court of appeals. We affirm in part and reverse in part the rulings of the district court and remand for new trial on the contract claim. Eighty-five percent of the costs of this appeal are taxed to Granson and the individual partners. Fifteen percent of the costs of this appeal are taxed to Kristerin.

DECISION OF COURT OF APPEALS AFFIRMED;

JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED WITH DIRECTIONS.

All Justices concur except WOLLE, J., who concurs in part and dissents in part.

WOLLE, Justice (concurring in part and dissenting in part).

I concur in Divisions I and II of the majority opinion because the evidence was clearly sufficient to generate jury questions on Kristerin's contract claims against Granson and its individual partners. I dissent from Divisions III and IV because in my view the evidence was also sufficient to generate jury questions on Kristerin's fraud claims against all defendants.

I. *Fraud Claim Against Granson and Its Partners.*

Kristerin alleged and offered substantial evidence to prove that Grandquist falsely made two representations to KJ's representative Netteland shortly after KJ and two partners of Granson had signed the written contract. One representation was "The deal is good." The other was "It only takes a couple partners to bind it anyway, so don't worry about it." Grandquist and the other Granson partners testified they never intended the contract signed by two of them to be a binding obligation.

After the date when Grandquist made the alleged representations, Granson offered one excuse after another why the transaction could not be closed. During that time Grandquist was secretly attempting to negotiate sale of the subject property to another investor on terms more favorable to Granson than the KJ contract. After stringing along Granson for several months, allegedly in an effort to keep open Granson's options on sale of the property, KJ aborted the KJ transaction. It then asserted the several contract defenses which may yet, after remand in accordance with the majority opinion, result in a jury verdict for the defendants.

The majority opinion holds that Kristerin as a matter of law cannot recover on its fraud theory, pointing out that if a jury on remand finds Grandquist represented that two partners could bind the partnership, that finding would undermine the Granson mutual-assent defense to the contract action. The majority apparently reasons that Kristerin's proof of that Grandquist representation must inexorably lead to a jury verdict for Kristerin on its contract theory, making unnecessary jury consideration of Kristerin's fraud claim. I question both the application of that rationale to the facts in this case and the underlying notion that a right to recover for breach of contract constitutes a defense to a fraud action.

In this case Granson and its partners have responded to the contract claim by asserting several alternative defenses which will be jury issues on remand: (1) the partners had not given mutual assent to the deal, signing only on condition that Grandquist would sign; (2) sale of the partnership's sole asset was not a sale in the usual course of business; and (3) the written offer was too uncertain or incomplete to constitute a contract. Perhaps, as the majority opinion holds, the first of those alternative defenses will be unavailing to . Granson if the jury finds Grandquist represented that two partners could bind the partnership. I question, however, whether Granson's other alternative defenses would be defeated by such a finding. Moreover, the jury might well find from the evidence that Grandquist made the first representation ("The deal is good.") but not the representation concerning binding authority of two partners. The jury might then find against Kristerin on its contract claim by finding merit in Granson's mutual-assent defense. I believe Kristerin was entitled to submission of the fraud count even though its proof of one of the alleged Grandquist misrepresentations would gut one of Granson's affirmative defenses to the contract action.

More importantly, I believe that a party may join in the same petition and present for jury determination alternative contract and civil fraud claims arising from a commercial transaction without having to elect one remedy or the other. *See Feldhahn v.*

*R.K.B. Quality Corp.*, 356 N.W.2d 226, 230 (Iowa 1984) ("It is fundamental that all well pled issues which are supported by substantial evidence should be submitted to the jury."); Iowa R.Civ.P. 22, 28 (permitting joinder of causes of action).

The evidence was sufficient to satisfy the elements of Kristerin's civil fraud cause of action on which the jury returned a substantial verdict against Granson. We have often listed those elements, most recently in *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984). On this record, viewed in the light most favorable to the plaintiff (Iowa R.App.P. 14(f)(2)), the jury could reasonably find by a preponderance of clear and convincing evidence that Grandquist misrepresented a material fact in telling KJ that the deal was good when his partners and he never intended the contract to be a binding obligation. The jury could determine that Grandquist knowingly made the misrepresentation with the intent that KJ be induced to keep the transaction alive while allowing Granson to seek a better deal with another investor. Moreover, the jury could find Kristerin justifiably relied on the misrepresentation to its detriment, suffering business losses and incurring considerable expense while attempting to close the transaction. Consequently, I believe the trial court erred in granting Granson's motion for judgment N.O.V. and in setting aside Kristerin's substantial fraud judgment against Granson.

II. *Fraud Claim Against Meggison.*

The defendant realtor Meggison and his defendant company (collectively "Meggison") were granted a directed verdict by the trial court and the majority affirms that ruling. I believe the trial court should have submitted that claim to the jury. If Kristerin's claims against Granson will be retried, its claims against Meggison should also be presented to the jury.

The majority opinion concludes that as a matter of law Meggison acted only as Granson's "mouthpiece" and made no representations different than Grandquist had made to KJ. The majority also holds that as a matter of law KJ did not justifiably rely on the agent Meggison's representations because it confirmed those representations with the principal, Grandquist. I disagree, believing it was for the jury on this record to decide what Grandquist said to Meggison, what Meggison said to KJ, and whether KJ justifiably relied on what Meggison told it. While it is true the jury might have believed Meggison's version that he merely repeated to KJ and its attorney what Grandquist thereafter told both of them, the evidence was irreconcilably in conflict on those questions of fact. Grandquist denied he told Meggison or KJ that the deal was good or that signatures of two partners were sufficient to bind Granson. The jury was free to believe Grandquist when he said he had not made such representations to Meggison, and to believe KJ's representative and attorney who said Meggison made the representations to them. No one questions that Meggison had authority to serve as Granson's agent in handling this transaction. If Meggison falsely represented that Grandquist had told him two partners could bind Granson, he would not have acted simply as a mouthpiece and could be held liable to Kristerin for making actionable false representations regardless of the outcome of Kristerin's contract and fraud claims against Granson and its partners. *See McCann v. Clark*, 166 Iowa 705, 713–14, 148 N.W. 1025, 1028–29 (1914); Restatement (Second) of Agency § 348 (1958).

The record also supports Kristerin's contention that KJ justifiably relied upon Meggison's alleged statements. *See Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980) (reliance tested subjectively by "what the *complaining party* reasonably could be expected to do," emphasis in original); *accord Sedco International, S.A. v. Cory*, 683 F.2d 1201, 1207 (8th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). KJ's representative Netteland and also KJ's attorney testified that they relied on Meggison's representations that there was a contract, two of three partners could bind Granson, and the deal would close pursuant to the written contract. Upon

remand for trial of Kristerin's contract action against Granson and its partners, Kristerin's claims against Meggison and his company should also be retried in order that a jury may decide what testimony was credible on the issues whether Meggison's representations went beyond what Grandquist had told him, whether KJ justifiably relied on the alleged misrepresentations of Meggison, and what damages KJ sustained as a result. Of course the jury's verdict for Kristerin based on its finding that Granson and its partners committed fraud, if not overturned by the majority opinion, would provide Meggison a complete defense since Meggison would have made no representations beyond those made by Grandquist himself.

On the record before us I would vacate the decision of the court of appeals, reverse the trial court's grant of judgment N.O.V. for Granson on the fraud claim, and remand this case for further proceedings on those contract and fraud claims that have not yet been submitted to a jury and that are not inconsistent with Kristerin's judgment on its fraud claims against Granson.